COURT OF
APPEALS

                                                    EIGHTH DISTRICT
OF TEXAS

                                                               EL
PASO, TEXAS

 

                                                                              )     

OSCAR
ELICER BUENO,                                   )                    No. 
08-01-00013-CR

                                                                              )

Appellant,                          )                             Appeal from

                                                                              )     

v.                                                                           )                    Criminal District Court

                                                                              )

THE STATE OF TEXAS,                                     )                   of Dallas County, Texas

                                                                              )

Appellee.                           )                     (TC# F-0070094-QH)

 

O
P I N I O N

 

Oscar
Elicer Bueno appeals from
his conviction for aggravated sexual assault of a child, enhanced by a prior
felony conviction for indecency with a child. 
A jury found Appellant guilty and the court assessed his punishment at
life imprisonment.  We affirm.

FACTUAL SUMMARY








Nine-year-old
Savoun Cheap (pronounced AChip@) lived in an apartment with his elderly
grandmother, Or Pok, a younger brother, Ty, and his ten-year-old sister, Sophoueth.  Appellant, known to Savoun
as AFat Joe,@
often visited the family at the apartment. 
Savoun=s
cousins, Juneda and Nita, were present during some of
Appellant=s
visits.  On several occasions while they
were seated in the living room on the couch, Appellant unzipped Savoun=s
pants and touched his Aprivate
parts.@  On other occasions, Savoun
saw Appellant=s Aprivate.@  Appellant took his Aprivate@ or Adick@ out and placed Savoun=s hand on it, while instructing him to Amove it up and down.@ 
Appellant engaged in this behavior even when Pok
and Savoun=s
siblings and cousins were in the apartment. 
Some of the other children actually saw the abuse occur but Savoun did not think that his grandmother did.  On yet other occasions, Appellant took Savoun into the bedroom and would place his Aprivate@
in Savoun=s
mouth.  He placed his hand on Savoun=s
head and then would Ashake@ his Aprivate
part@ in Savoun=s
mouth.  No one else was present in the
bedroom with them.  Appellant often gave
money to Pok before he left the apartment.  Appellant also gave money to Savoun and sometimes took him to eat at Burger King or
Pizza Inn.  Savoun
did not report the abuse to his grandmother because he thought she would get
angry.  He never told anyone else until
Allison White talked to him about it. 
When Pok found out, she asked Savoun why he had told and attempted to hit him with the
vacuum cleaner cord.

Allison
White works with a church-related organization which assists Southeast
Asian refugees in the Dallas area. 
Based on the request of many refugees, the organization began an
after-school program 
and summer program for children in the church neighborhood.  The organization provides food and other
assistance for families settling into the community.  White met Savoun
through her involvement in this organization. 
She had seen Savoun and his two siblings being
walked to school each day by their elderly grandmother, Or Pok.  Staff members became concerned about the
welfare of the children and Pok since they never saw
the children=s
parents.  Consequently, White visited the
family to determine their needs.  Through
these visits, she became well acquainted with the family and learned they had
many difficulties because of their poverty. 









Savoun=s
ten-year-old cousin, Juneda Nath,
told Sandy Hines, the coordinator of the after-school program, that Appellant
had masturbated in front of her, Savoun, and other
children, and that he had made Savoun touch his
genitals.  Hines called White and told
her about the sexual abuse allegations. 
White drove immediately to Savoun=s home and talked to Savoun, Ty, and Sophoueth.  When she asked  the children
whether they knew Appellant, they became noticeably uncomfortable and
unhappy.  In fact, Savoun
attempted to hide.  White spoke with them
generally about her telephone conversation with Hines.  Concerned about the children=s safety, White called the Dallas
Children=s
Advocacy Center and made a report.  The
children were taken to the Advocacy Center where they were interviewed and
provided with counseling.  Based upon her
knowledge of Cambodian culture, White was not surprised that Savoun did not report the abuse to anyone because it would
be considered shameful and a matter best dealt with by the family.  Following the revelation of the abuse, Savoun appeared to be fearful of Appellant.

Lori
Langston, a child advocate employed by the Dallas Children=s Advocacy Center, interviewed Savoun.  Her purpose
in interviewing Savoun was to determine whether abuse
had occurred, and if it had, to determine what had happened.  The interview process employs five
stages:  rapport, anatomy identification,
touch inquiry, abuse scenario, and closure. 
Savoun made an outcry to Langston during the
interview in which he described three incidents of abuse.  He told her that Appellant had touched his
penis and that he had touched Appellant=s
penis with his hand.  Appellant gave Savoun a dollar after each incident, and Savoun gave the money to his grandmother.  On another occasion, Appellant placed his
penis in Savoun=s
mouth and ejaculated.  








 Savoun was also
provided counseling by Madeline McClure, a child therapist who is employed by
the Dallas Children=s
Advocacy Center.[1]  As a child therapist, McClure works with
children who have been severely abused and neglected and helps them get over
their trauma so that they can function properly.  McClure explained that children are typically
reluctant to discuss sexual abuse due to embarrassment, shame, and a feeling of
ostracism, and they often feel responsible for the abuse.  Additionally, they fear retaliation and want
to avoid disruption of family life. 
McClure had worked with Savoun in thirty
counseling sessions.  As part of her work
with him, McClure had Savoun complete several
drawings and write a booklet about the abuse and himself.  In a written/verbal exercise entitled ATelling Each Other What Happened,@ Savoun
related some details of the abuse in response to written questions.  In these answers, he told McClure that he was
six years old when Appellant began to abuse him.  On the first occasion of abuse, Appellant
moved Savoun=s
hands to Appellant=s pants
and penis.  Later, the abuse changed and
Appellant touched Savoun=s
private and faced him or Alied
on top@ of
him.  Appellant abused Savoun on many occasions between the ages of six and
eight.  Telling others about the abuse
scared Savoun because he was afraid Appellant would
kill him.  Savoun=s drawings depicted his fear of
Appellant.  In one of these drawings,
Appellant chased Savoun while armed with a
knife.  In another, Savoun
ran towards a telephone while saying AHelp
me, 911.@

Three
witnesses testified on Appellant=s
behalf.  Paanlel
Mean is the stepmother of Savoun=s cousins, Juneda
and Nita.  Mean went to Pok=s
apartment almost every day and she sometimes saw Appellant there.  Mean never saw Appellant=s wife at Pok=s apartment.  Mean saw Savoun sit
on Appellant=s lap and
ask him for money, but she never saw Appellant do anything bad to Savoun.  Appellant
sometimes went into the bedroom with the children.  Juneda did not tell
Mean about any sexual contact between Appellant and Savoun.  Mean knew that Appellant gave money to Pok and to Aeverybody=s children.@








Or
Pok knew Appellant because he occasionally came to
her apartment.  He sometimes bought the
children hamburgers and gave her money to buy beer nuts.  She never saw Appellant do anything bad with Savoun or the other children and she insisted that
Appellant never went into the bedroom with the children.  

Ry Han is Appellant=s
wife.  She knew Pok
and occasionally visited in the apartment. 
Shortly before these allegations were made by the children, Appellant
had stopped giving them money.  

Sambo Sim testified in rebuttal
for the State.  As a volunteer through
her church, Sim often helped Pok
by making sure that she got her medication, by taking her shopping or to
church, and by acting as a translator. 
Shortly after Savoun made these allegations, Sim acted as a translator in a conversation between Pok and two detectives. 
Pok told Sim and the
detectives that she had seen Appellant alone in the bedroom with the
children.  Sim
was sure Pok had said this because she verified each
statement with Pok by repeating the question and
asking if this was her answer.  Sim had never translated anything for law enforcement
officers before and she wanted to be sure that she translated it
correctly.  

The
jury found Appellant guilty as charged in the indictment, rejecting Appellant=s defense that the children fabricated
these allegations in retaliation for his refusal to give them money.  Appellant raises four points on appeal.

FACTUAL SUFFICIENCY








In Point of Error No. One, Appellant challenges the factual
sufficiency of the evidence to support his conviction.  He contends that the evidence established
that he was falsely accused of sexual abuse. 
In reviewing the factual sufficiency of the evidence to support a
conviction, we are to view all the evidence in a neutral light, favoring
neither party.  Johnson
v. State, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000); Clewis v. State, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). 
Evidence is factually insufficient if it is so weak that it would be
clearly wrong and manifestly unjust to allow the verdict to stand, or the finding
of guilt is against the great weight and preponderance of the available
evidence.  Johnson, 23 S.W.3d at 11. 
Therefore, the question we must consider in conducting a factual
sufficiency review is whether a neutral review of all the evidence, both for
and against the finding, demonstrates that the proof of guilt is so obviously
weak as to undermine confidence in the fact finder=s
determination, or the proof of guilt, although adequate if taken alone, is
greatly outweighed by contrary proof.  See
id.  In performing this review, we
are to give due deference to the fact finder=s
determinations.  See id. at 8‑9; Clewis, 922
S.W.2d at 136.  Consequently, we may find
the evidence factually insufficient only where necessary to prevent a manifest
injustice from occurring.  See Johnson,
23 S.W.3d at 9, 12; Cain v. State, 958 S.W.2d 404, 407 (Tex.Crim.App. 1997).

Aggravated Sexual Assault

A
person commits aggravated sexual assault if he intentionally or knowingly
causes the penetration 
of the mouth of a child by the sexual organ of the actor and the
child is younger than fourteen years of age. 
Tex.Pen.Code Ann. '
22.021(a)(1)(B)(ii), (2)(B)(Vernon Supp. 2002).  The indictment charged Appellant with
aggravated sexual assault of Savoun pursuant to this
section of the Penal Code.  Further, the
application paragraph of the jury charge tracked the indictment.








Appellant
concedes that there is legally sufficient evidence to establish the elements of
the offense, but he argues that the overwhelming weight of the evidence showed
that he was falsely accused by Savoun.  To support his argument, he first points to
the State=s failure
to have Savoun=s
brother, Ty, corroborate the complainant=s testimony regarding the aggravated
sexual assault.  Savoun
testified that Appellant had placed his penis in Savoun=s mouth on thirty different occasions
and Ty had been present during some of the
incidents.  While Appellant is correct
that the State did not call Ty as a witness, the jury
was also able to consider Appellant=s
failure to present his testimony. 
Additionally, Appellant argues that Savoun=s story is undercut by Juneda=s
testimony that she never saw Appellant place his penis in Savoun=s mouth.  However, Savoun=s cousin, Nita, saw Appellant insert
his penis in Savoun=s
mouth.  Appellant also points to Pok=s
testimony that Appellant never went into the bedroom with the children;
however, Sambo Sim insisted
that Pok told her and the detectives just the
opposite.  Sim
verified this statement with Pok.

Appellant
also contends that Savoun was shown to be
non-credible because he told the therapist, Madeline McClure, that Appellant
had molested forty other people, including two friends, three cousins, Ty, and Sophoueth.  McClure believed others had been molested by
Appellant but that Savoun had exaggerated the number
of people.  Appellant also points to
McClure=s
statement that Savoun had not been Acompletely forthright@ in telling her what had happened.  A closer review of McClure=s testimony indicates that she believed
Savoun had not told her everything that had
happened, and had omitted some of the details of the abuse due to his
embarrassment and reluctance to discuss it. 
By the same token, McClure insisted that she did not believe Savoun had lied to her during the eight or nine months she
had worked with him.

Undoubtedly,
there were conflicts in the testimony which the jury had to resolve while
taking into account the credibility of the various witnesses, including Savoun.  We are
unable to conclude that the jury=s
resolution of these issues in favor of the State is contrary to the great
weight and preponderance of the evidence. 
Accordingly, we find that the evidence is factually sufficient to
support Appellant=s
conviction.  Point of
Error No. One is overruled.








OUTCRY TESTIMONY

In Point of Error No. Two, Appellant complains of the
admission of hearsay statements through Lori Langston because the State failed
to establish compliance with Article 38.072 of the Texas Code of Criminal
Procedure.  More specifically, he argues
that White, not Langston, was the first person to whom Savoun
made an outcry within the meaning of the outcry statute. 

Article
38.072 of the Texas Code of Criminal Procedure allows admission of certain
hearsay testimony in the prosecution of offenses committed against children
twelve years of age or younger.  See
Tex.Code Crim.Proc.Ann. art. 38.072 (Vernon Pamph. 2002)(the Aoutcry@ statute).  The outcry statute applies only to statements
made (1) by the child against whom the offense was allegedly committed, and (2)
to the first person, eighteen years of age or older, to whom the child made a statement
about the offense.   Tex.Code Crim.Proc.Ann. art. 38.0702, '
2.  To be admissible under this
statute, the child=s
statement to the witness must describe the alleged offense in some discernible
manner and must be more than a general allusion to sexual abuse.  See Garcia v. State,
792 S.W.2d 88, 91 (Tex.Crim.App. 1990); Sims v.
State, 12 S.W.3d 499, 500 (Tex.App.‑-Dallas
1999, pet. ref=d); Hayden
v. State, 928 S.W.2d 229, 231 (Tex.App.‑-Houston
[14th Dist.] 1996, pet. ref=d).  A trial court has broad discretion in
determining the admissibility of outcry statements pursuant to this statute,
and we will not disturb the trial court=s
ruling absent an abuse of discretion.  See
Garcia, 792 S.W.2d at 92.  An abuse of discretion occurs only where the
trial court=s ruling
falls outside the zone of reasonable disagreement.  See Montgomery v. State, 810 S.W.2d
372, 391 (Tex.Crim.App. 1991)(opinion
on reh=g).








Pursuant
to Article 38.072, ' 2(b),
the State provided notices to Appellant that it intended to offer outcry
testimony through White and Langston.  See
Tex.Code Crim.Proc.Ann.
art. 38.072, '
2(b).  In a hearing held outside
the presence of the jury to determine the admissibility of Langston=s outcry testimony, Langston stated
that she was the first person to whom Savoun had
related the details of the abuse.  Some
of Savoun=s
statements describing the abuse were made to Langston in response to
questions.  White also testified in this
hearing.  According to White, Savoun did not relate any details of the abuse but simply
told her that Appellant had done Abad
things or something bad.@  In response to a question by the prosecutor
asking whether Savoun had told her any details about
what had happened, White stated:

Well, that day that
I went over there, he had told me that he did that thing to him.  And then his sister said, really bad things,
or something like that?  And he said, Yes.

 

She reiterated
that all Savoun told her was that Appellant had done
bad things to him and she did not push him to reveal anything beyond this
generalization.  At the conclusion of
this hearing, the trial court determined that Langston was the outcry witness
and admitted her testimony over Appellant=s
objection.  

Appellant
points to White=s
testimony which occurred prior to the hearing as evidence that she was the
first person to whom Savoun made statements regarding
the sexual abuse.  White testified that
she went to Savoun=s
apartment and questioned the children about whether they knew Appellant.  The children exhibited obvious discomfort in
response to that question, but admitted they knew Appellant.  The following exchange then occurred:

[White]:            And
in reaction to their response, I was concerned. 
And so I asked them, you know, why were they responding that way,
basically?  And then they responded to me
and told me some things.

 

[Prosecutor]:    Did
they tell you -- what was your concern after they told you some things?

 

[White]:            I
was concerned for their safety.








[Prosecutor]:    Okay.  And specifically what kind of safety, I mean, physical safety, mental safety or what?

 

[White]:            Everything.

 

Later, the
prosecutor specifically asked White whether Savoun
told her the specific details about the sexual abuse.  White replied:

To be honest, I didn=t
ask specifically about stuff that happened, that I had been told on the
phone.  And at that point, none of the
details were told to me when I first talked to him.  

 

White clarified
that she knew sexual abuse was involved because of what Juneda
had told Hines.  These details had been
provided to White by Hines in the phone call she referred to in her testimony. 








Admittedly,
the determination of who is the Afirst
person@ to whom
the child victim made a statement about the offense may sometimes be a
difficult one and demands close scrutiny by the trial court. See Garcia,
792 S.W.2d at 91. 
White=s
statement that the children Atold
her some things@ does not
clearly show what Savoun told her.  See Lee v. State, 21
S.W.3d 532, 537 (Tex.App.--Tyler 2000, no
pet.)(holding that the evidence must clearly show that
the victim described the offense in some discernible manner to the
witness).  Savoun=s statement to White that Appellant had
done Asomething
bad@ to him did not describe the offense in
some discernible manner but was only a general allusion to sexual abuse.  Consequently, the trial court did not abuse
its discretion in finding that Langston, not White, was the first person to
whom Savoun made a statement about the offense within
the meaning of the outcry statute.  See
Castelan v. State, 54 S.W.3d
469, 475 (Tex.App.--Corpus Christi 2001, no
pet.)(because victim did not relay specific details of abuse to grandmother,
only stating that appellant Aput
his thing in through the back,@
trial judge did not abuse discretion in determining counselor was proper outcry
witness, not grandmother); Sims, 12 S.W.3d at 500 (where victim told
mother that the defendant had Atouched
her private parts@ but made
no other statement about the offense, the trial court did not abuse its
discretion in finding that the statement was nothing more than a Ageneral allusion@
of sexual abuse, and therefore, the counselor, not the mother, was the proper
outcry witness).  Point
of Error No. Two is overruled.

HEARSAY

Appellant
next presents two related points of error regarding the admission of hearsay
through the therapist, Madeline McClure. 
In Point of Error No. Three, Appellant contends
that the trial court abused its discretion in overruling his hearsay objection
and admitting State=s Exhibit
13 which is a written questionnaire answered by Savoun
while in therapy.  In
Point of Error No. Four, Appellant argues that the court erred in
permitting McClure to testify as to Savoun=s statement that he feared Appellant
would kill him.  The State responds that
all of the evidence is admissible pursuant to Rule 803(4) which establishes an
exception for statements made for purposes of medical diagnosis or treatment.  See Tex.R.Evid. 803(4).  We agree with the State.

State=s Exhibit 13 is a written exercise
completed by Savoun as part of therapy.  It is entitled ATelling
Each Other What Happened@
and it included such questions as AWho
molested you?,@
ATell about the very first time you were
molested,@ and AHow did it feel to tell about what
happened?@  Savoun answered
each of the questions asked of him and McClure testified in detail about the
statements Savoun made in State=s Exhibit 13.








McClure
also testified regarding State=s
Exhibit 11 (a drawing by Savoun entitled AA Picture of My Scary Thoughts@) and State=s
Exhibit 15 (a ALetter to
the Perpetrator@).  State=s
Exhibit 11 depicted Appellant, armed with a knife, chasing Savoun.  McClure testified that Savoun
was, in his own words, afraid that Appellant would kill him.  Savoun was unable
to complete the letter to Appellant because he was too terrified.  As evidence of his terror, McClure pointed to
State=s
Exhibit 11.

Rule
803(4) of the Texas Rules of Evidence is an exception to the hearsay rule for
statements Amade for
purposes of medical diagnosis or treatment and describing medical history, or
past or present symptoms, pain, or sensations, or the inception or general
character of the cause or external source thereof insofar as reasonably
pertinent to diagnosis or treatment.@  Tex.R.Evid. 803(4).  This exception has repeatedly been applied to
allow admission of statements by a suspected victim of child abuse as to the
causation and source of the child=s
injuries.  See Puderbaugh
v. State, 31 S.W.3d 683, 685 (Tex.App.‑‑Beaumont
2000, pet. ref=d)(Rule
803(4) applied to testimony of clinical social worker regarding the child
victim=s
statements regarding the sexual abuse by the defendant);  Beheler
v. State, 3 S.W.3d 182, 189 (Tex.App.‑‑Fort
Worth 1999, pet. ref=d)(Rule
803(4) applied to testimony by sexual assault examiner of child=s statements describing sexual abuse
and the identity of the defendant); Gohring
v. State, 967 S.W.2d 459, 461 (Tex.App.‑‑Beaumont
1998, no pet.)(Rule 803(4) applied to testimony by play therapist regarding
sexual abuse of child by her father); Macias v. State, 776 S.W.2d 255,
258‑59 (Tex.App.‑‑San Antonio 1989,
pet. ref=d)
(statements by a psychologist admissible under Rule 803(4) because they were
made for the purpose of medical diagnosis and treatment).  Further, Texas courts have allowed non‑physicians
to testify under the medical diagnosis and treatment exception to the hearsay
rule.  See  Puderbaugh,
31 S.W.3d at 685 (clinical social worker); Gohring,
967 S.W.2d at 461 (play therapist); Macias, 776 S.W.2d at 258‑59
(psychologist).








The
State established through McClure that the purpose of the exercises giving rise
to her testimony was to assist Savoun with the
emotional trauma of the sexual abuse. 
Further, she relied on Savoun=s statements to diagnose his emotional
problems and to treat him.  As such, it
was important for her to discover the source of those problems.  Based upon this evidence,  the State established that the out‑of‑court
statements were reasonably pertinent to medical diagnosis or treatment.  Therefore, the trial court did not abuse its
discretion in overruling Appellant=s
hearsay objection and admitting the testimony. 
Points of Error Nos. Three and Four are overruled.  Having overruled each of Appellant=s points of error, we affirm the
judgment of the trial court.

 

 

August 29, 2002

                                               
                         

ANN CRAWFORD McCLURE, Justice

 

Before Panel No. 4

Barajas, C.J., Larsen, and
McClure, JJ.

 

(Do Not Publish)











[1]
 Madeline
McClure is unrelated to the author.