Jose Angel **RODRIGUEZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 13–93–340–CR.

Court of Appeals of Texas, Corpus Christi.

Nov. 17, 1994.

---

Aníbal J. Alaniz, McAllen, for appellant.

Theodore C. Hake, Asst. Crim. Dist. Atty., Rene Guerra, Dist. & County Atty., Rebecca Pool, Asst. Dist. Atty., Edinburg, for appellee.

Before GILBERTO HINOJOSA, FEDERICO G. HINOJOSA, Jr., and YAÑEZ, JJ.

## OPINION

GILBERTO HINOJOSA, Justice.

A jury found appellant, Jose Angel Rodriguez, guilty of possession of a usable quantity of marijuana in an amount of more than fifty pounds but less than two hundred pounds. The jury assessed punishment at ten years probation. By three points of error, appellant complains that the evidence is insufficient to support the conviction. We affirm.

In the early morning hours of December 15, 1992, Border Patrol agents, on duty in the Santa Maria area of Hidalgo County, Texas, received notification that one of the sensors located near the Rio Grande River had sounded. This is an area classified by the Border Patrol as a corridor for illegal entries and drug smugglers. Four agents checked out the area and discovered three burlap sacks containing bundles of marijuana. The bundles were rather evenly distributed among the three sacks and weighed 187 pounds.

The agents also found four or five sets of shoe prints in the area. The prints were made by tennis shoes, a pair of flat-soled shoes, and a pair of cowboy boots. The latter two sets of prints were found around the bundles themselves. Starting from the bundles, Agent Jose Hernandez followed the

tracks left by the cowboy boots which led him to a tree fifty yards away where Rodriguez was hiding. Rodriguez was wearing boots which matched the tracks. The agents testified that there was only one set of bootprints and that there was no indication that more than one individual had been wearing boots. After the agents apprehended Rodriguez, they continued to search the area. They found no other prints, other than the four or five sets of prints, nor did they find any other persons.

The agents returned to the bundles of marijuana, tracked the prints to the sensors, and found bootprints there. They also found fresh prints back at the river at a commonly used crossing point. Drag marks were found next to these tracks indicating that the person leaving the imprints crossed the river at the same place as the load of marijuana. Agent Jesus Ramos stated that the mud on Rodriguez's boots matched the mud down at the river. The agents concluded that the tracks at the river, the sensor, and leading up to and going away from the bundles were all made by the same pair of boots and matched those worn by Rodriguez. The agents concluded this by examining certain distinctive features such as the wear mark on the heel of the boots and the pattern of small ridges on the heel.

In trying to establish a connection between Rodriguez and the drugs, the following exchange occurred between the prosecutor and Agent Ramos:

Q Can you tell from the depths of the tracks whether somebody is carrying something or not?

A Yes. Yes, you can because the heel and toe mark will be different. If someone's carrying a load they are not lively steps, you know, so they kind of put their foot down and when they push, instead of the dirt going back onto the track the dirt goes forward from the toe to shoe. So you know if they're encumbering something.

Q Was the bootprint encumbered as if had been carrying something at any time?

A Yes. He didn't seem like he was walking fast. You know, if somebody's just walking, it's very obvious because the stride is confident, it's the same length and, you know, it's quick and you can tell when somebody's walking quick. You can tell when somebody's running.

\* \* \* \* \* \*

Q And was he carrying anything?

A It appeared that he was carrying something because he wasn't taking long steps.

Q Something heavy?

A Right.

Agent Terry Cooper's testimony also showed that the person wearing the boots had been carrying something:

Q In this case, if you recall, do you personally recall noticing whether the boot track appeared to have been carrying something at any time?

A Well, there were some down in the dirt pretty good. I mean, they were into the ground pretty good.

Q Is that before or after the marijuana?

A Before—now afterwards the ground was disturbed where you could tell like somebody had been running.

Q Tracks running from the marijuana?

A Right.

Q And were they running up to that point?

A No. No. Looked like walking. Usually when you can tell that somebody runs because they kind of spread out the dirt more as they're running and tend to kick up more dirt around the tracks.

Q Would someone of the defendant's weight ordinarily leave heavy imprints?

A That's hard to say. I really couldn't say for sure.

Q Do you have an opinion as to whether the person wearing the boots had been carrying the marijuana at any time?

A Yes, I do because, as I say, the tracks led up to where the bag was dropped and then the tracks led immediately away from where the bag was dropped.

Q Okay. And what's your opinion?

A That someone—that whoever left those tracks were the ones that were carrying something because they were exactly in line from where the bag was left when it got there and from where they took off. .

Q Okay. And that led right up to the defendant?

A Yes, ma'am. The tracks did.

Thus, the agents concluded that the individuals had been walking and carrying the bundles but then dropped the bundles and ran when they heard the patrol approaching. However, the agents never saw anyone with the marijuana.

Rodriguez testified that he decided to cross the river illegally because he lost his green card while he was in Mexico for a funeral. He also stated that he was on probation for driving while intoxicated and was afraid that his probation officer would find out that he had left the country without permission, although he had been informed that no permission was needed in case of an emergency. He got lost trying to find the town of Santa Maria and followed three men who knew the way. While walking, someone shouted, "la migra," meaning the Border Patrol, and they all started running. As he was running, Rodriguez saw one of the sacks of marijuana and almost stumbled over it, thereby accounting for the presence of his bootprints near the sacks. Rodriguez further stated that, although he was running away from the Border Patrol, he stopped when he saw the sack, looked in it, then continued running. Rodriguez's testimony conflicts with the agents' testimony that the tracks leading up to the sacks indicate a walking, not running pace.

By his first two points of error, appellant asserts that the trial court erred in denying his motion for instructed verdict and that the evidence is legally insufficient to warrant his conviction for possession of marijuana. Appellant asks this court to apply the "reasonable hypothesis of innocence" analytical construct and argues that cases decided under this theory are still valid precedents, despite *Geesa v. State*, 820 S.W.2d 154 (Tex.Crim. App.1991).

 A challenge to the trial court's ruling on a motion for instructed verdict is viewed as a challenge to the sufficiency of the evidence to support the conviction. *Madden v. State*, 799 S.W.2d 683, 686 (Tex.Crim.App. 1990), *cert. denied*, 499 U.S. 954, 111 S.Ct. 1432, 113 L.Ed.2d 483 (1991). When reviewing the sufficiency of the evidence, we must view the entire body of evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found all of the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 309, 99 S.Ct. 2781, 2783, 61 L.Ed.2d 560 (1979); *Geesa*, 820 S.W.2d at 157; *Granados v. State*, 843 S.W.2d 736, 738 (Tex.App.—Corpus Christi 1992, no pet.). The same standard of review applies to both direct and circumstantial evidence cases. *Garcia v. State*, 840 S.W.2d 957, 958 (Tex.Crim.App.1992); *Geesa*, 820 S.W.2d at 159.

 *Geesa* held that the reasonable hypothesis analytical construct used in appellate review for evidentiary sufficiency is no longer valid in Texas appellate courts. 820 S.W.2d at 161. *Geesa* expressly overruled the prior line of cases that conflicted with its ruling. *Id.* The *Geesa* court further held that its ruling applied to future cases tried after *Geesa*. 820 S.W.2d at 165. *Geesa* was decided in 1991, and appellant was charged with the offense in December 1992 and tried in March 1993. Thus, the analytical construct is inapplicable here. We will review the evidence in accordance with the *Jackson* standard.

 The jury resolves any conflicts in the evidence and is the sole judge of the witnesses' credibility and the weight given to the evidence. *Adelman v. State*, 828 S.W.2d 418, 421 (Tex.Crim.App.1992); *Williams v. State*, 692 S.W.2d 671, 676 (Tex.Crim.App. 1984). This court may not position itself as a thirteenth juror and reweigh the evidence. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim.App.1988).

 To convict a person of unlawful possession of a controlled substance, the State must prove 1) that the person exercised care, control, custody, or management

over the contraband and 2) that the person knew the matter was contraband. *Herndon v. State,* 787 S.W.2d 408, 409–10 (Tex.Crim. App.1990) (en banc); *Granados,* 843 S.W.2d at 739. When an accused does not have exclusive possession of the place where the contraband is found, the State must show additional facts and circumstances which affirmatively link the accused to the contraband. *Cude v. State,* 716 S.W.2d 46, 47 (Tex.Crim.App.1986); *Sendejo v. State,* 841 S.W.2d 856, 859 (Tex.App.—Corpus Christi 1992, no pet.). The affirmative link between the accused and the contraband must be in such a manner and to such an extent that a reasonable inference may arise that the accused knew of the contraband's existence and exercised control over it. *Martin v. State,* 753 S.W.2d 384, 387 (Tex.Crim.App.1988); *Sendejo,* 841 S.W.2d at 860. If the controlled substance can be seen and measured, the amount is sufficient to establish that a defendant knew it was a controlled substance. *Daniels v. State,* 853 S.W.2d 749, 751 (Tex. App.—Houston [1st Dist.] 1993, no pet.).

■ There is uncontroverted evidence that Rodriguez came in direct contact with the sacks of marijuana. He testified that he ran by the sacks, stopped, and looked in the sacks. Border Patrol agents testified that there was only one set of bootprints in the area and that the prints matched the boots worn by Rodriguez when apprehended. Tracks made by cowboy boots were found next to drag marks at the river. The agents followed the same set of tracks directly to the bundles and the same tracks led away from the bundles and directly to Rodriguez. Agent Cooper testified that the tracks had been "exactly in line from where the bag was left . . . and from where they took off," the tracks led right up to Rodriguez. The agents further testified that from the imprints of the boots, they were able to determine that the person wearing the boots was carrying something heavy. Judging from the stride and distance between the prints, the agents concluded that they were made by persons walking toward the bundles rather than running as Rodriguez stated.

Viewing all the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found from this evidence that Rodriguez knowingly possessed marijuana. We overrule appellant's first two points.

By his third point, appellant challenges the factual sufficiency of the evidence to support the conviction. Whether intermediate appellate courts have the authority to consider factual insufficiency claims is an unsettled issue. In *Meraz v. State,* 785 S.W.2d 146 (Tex.Crim.App.1990), the Court of Criminal Appeals applied a factual sufficiency standard of review as to affirmative defenses where the defendant has the burden of proof. However, *Meraz* left open the question whether appellate courts have the authority to review factual insufficiency when the State has the burden of proving the elements of the offense. The intermediate appellate courts that have considered the question have reached contrary results. *See Mukes v. State,* 828 S.W.2d 571, 573–74 (Tex.App.— Houston [14th Dist.] 1992, no pet.) (*Meraz* is limited to review of issue upon which the defense has the burden of proof or affirmative defenses) and *Stone v. State,* 823 S.W.2d 375, 379 (Tex.App.—Austin 1992, pet. ref'd, untimely filed) (criminal defendant is entitled to factual sufficiency review as a matter of state constitutional law).

We decline to rule on whether we have such authority. However, even if it is within our jurisdiction to evaluate the factual sufficiency of the evidence, we find that there is sufficient evidence to support the verdict since the verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Francis v. State,* 877 S.W.2d 441, 442 (Tex.App.—Austin 1994, no pet.). We overrule appellant's third point.

The judgment of the trial court is affirmed.