

# NUMBER 13-06-00637-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**LUIS ANTONIO GARCIA,** Appellant,

**v.**

**THE STATE OF TEXAS,** Appellee.

---

### On appeal from the 139th District Court
### of Hidalgo County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Benavides
Memorandum Opinion by Justice Rodriguez**

Appellant, Luis Antonio Garcia, appeals from a conviction of murder. *See* TEX. PENAL CODE ANN. § 19.02(b)(1) (Vernon 2003). By eight issues, Garcia contends that: (1) the evidence at trial is legally insufficient to support his conviction; (2) the evidence is factually insufficient to support his conviction; (3) the trial court erred in denying his motion for instructed verdict; (4) the trial court erred in admitting the pre-trial photographic

identification and trial testimony of Billy Wayne Johnson; (5) the admission of four of the State's photographic exhibits violated his rights to due course of law under Article I, section 19 of the Texas Constitution; (6) the trial court erred by limiting his cross-examination of Claudia Gonzalez; (7) the trial court erred by allowing evidence of Garcia's alleged gang affiliation; and (8) the trial court erred by allowing "backdoor hearsay" testimony. We affirm.

## I. BACKGROUND

On April 11, 2000, Rodulfo Landa died after he was stabbed in the chest at a night club. Johnson provided details for a composite sketch of the alleged suspect. After the composite sketch was published on local news broadcasts, an anonymous person called Crime-Stoppers[1] and stated that the sketch resembled a person known as "El Morrito" who was later identified as Garcia. Johnson was unable to identify Garcia in a photo lineup.

Gonzalez, Garcia's ex-girlfriend, informed Crime-Stoppers that the sketch resembled Garcia, that Garcia told her he had stabbed Landa, and that Garcia showed her the knife he used to commit the offense. Gonzalez told Investigator David Rogers that after the stabbing, she accompanied Garcia to 703 Chapa Street where Garcia left the knife. Investigators searched the house and found the knife in a pair of shorts. They also found a driver's license belonging to Demencio Martinez, a person acquainted with Garcia, in the shorts.

The case went unsolved and was considered a "cold case"[2] until Investigator Frank Trevino was assigned to "follow up" on it. Investigator Trevino asked Johnson to view the

---

[1] Crime-Stoppers is a division of the Corpus Christi Police Department's Crime Investigation Division.

[2] According to Investigator Trevino, a "cold case" is one "that an investigator has already exhausted all the means to investigate and doesn't have anywhere else to go, puts it aside for–for that reason, and it just—we wait until there's some more information . . . to investigate, to follow-up on."

2

photo lineup again. Johnson reviewed the photo lineup and indicated that Garcia was the person he described in the composite sketch. Johnson later testified, however, that Garcia was not the person he described.

The jury found Garcia guilty of murder and an enhancement allegation, that is not at issue, as "true." Punishment was assessed at imprisonment in the Institutional Division of the Texas Department of Criminal Justice for sixty-five years and a fine in the amount of $10,000. This appeal ensued.

## II. LEGAL AND FACTUAL SUFFICIENCY

By his first issue, Garcia challenges the legal sufficiency of the evidence to support his conviction because the State failed to establish beyond a reasonable doubt that it was Garcia who caused Landa's death. By his third issue, Garcia contends that the trial court erred by denying his motion for instructed verdict. We address Garcia's first and third issues together because a challenge to the trial court's ruling on a motion for instructed verdict is a challenge to the legal sufficiency of the evidence. *See McDuff v. State*, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997); *Billy v. State*, 77 S.W.3d 427, 428 (Tex. App.–Dallas 2002, pet. ref'd)*; Cantu v. State*, 944 S.W.2d 669, 670 (Tex. App.–Corpus Christi 1997, pet. ref'd) (citing *Cook v. State*, 858 S.W.2d 467, 470 (Tex. Crim. App. 1993); *Rodriguez v. State*, 888 S.W.2d 211, 214 (Tex. App.–Corpus Christi 1994, no pet.)). By his second issue, Garcia generally argues that the evidence was factually insufficient to support his conviction because the jury was not rationally justified in finding guilt beyond a reasonable doubt.

### A. Standard of Review and Applicable Law

In conducting a legal sufficiency review, we view the relevant evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found

3

the essential elements of the crime beyond a reasonable doubt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)); *Escamilla v. State*, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004). The trier of fact is the sole judge of the facts, the credibility of the witnesses, and the weight given to testimony. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Beckham v. State*, 29 S.W.3d 148, 151 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd). We do not reevaluate the weight and credibility of the evidence, and we do not substitute our own judgment for the trier of fact. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000); *Beckham*, 29 S.W.3d at 151. Instead, we consider whether the jury reached a rational decision. *Beckham*, 29 S.W.3d at 151.

In a factual sufficiency review, we review the evidence in a neutral light to determine whether the evidence is so weak that the jury's verdict seems clearly wrong and manifestly unjust or the jury's verdict is against the great weight and preponderance of the evidence. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). This Court will not reverse the jury's verdict unless we can say with some objective basis in the record that the great weight and preponderance of the evidence contradicts the verdict. *Id.* at 417.

The State is not required to present direct evidence, such as eyewitness testimony to establish guilt. *See Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). "Circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13; *Guevara*, 152 S.W.3d at 49. The law does not require that each fact "point directly and independently to the guilt of the appellant, as long as the cumulative effect of

4

all the incriminating facts is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13; *Guevara*, 152 S.W.3d at 49.

Both legal and factual sufficiency are measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *Adi v. State*, 94 S.W.3d 124, 131 (Tex. App.–Corpus Christi 2002, pet. ref'd). Under a hypothetically correct jury charge, a person commits murder if he "intentionally and knowingly causes the death of an individual" or intended to cause serious bodily injury and committed an act clearly dangerous to human life that caused death. TEX. PENAL CODE ANN. § 19.02(b)(1), (2).

### B. Analysis

Garcia argues that the State did not establish that he murdered Landa because there was no eyewitness testimony. We disagree. *See Guevara*, 152 S.W.3d at 49.

Officer Herrera stated that Garcia acknowledged that he was at the night club on the night of the stabbing. Johnson assisted the police in creating a composite sketch of the suspect. Based on the composite sketch, Gonzalez contacted Crime-Stoppers and informed the police that the composite sketch resembled Garcia. Johnson identified Garcia from a photo array as the person he saw hit Landa in the chest. Gonzalez testified that Garcia told her he stabbed Landa, showed her the knife he used, and left the knife at the Chapa Street residence. Police found a knife fitting the description given by Gonzalez at that residence. Investigator Rogers testified that, after his interview with Gonzalez, he determined that the knife recovered was the murder weapon. Also, Gonzalez told Investigator Trevino that the knife was the same one shown to her by Garcia. At trial, when the State showed Gonzalez a picture of the knife discovered by police, she testified that

5

it was the same knife Garcia claimed he used to stab Landa. Finally, Martinez testified that Garcia told him that he stabbed Landa.

In support of his factual sufficiency challenge, Garcia argues that the following evidence is contrary to the verdict and outweighs the evidence supporting the verdict: (1) at trial, Johnson "never wavered in his testimony" that Garcia was not the person he described to investigators; (2) Jorge Humberto Lopez, a companion of Landa, did not see who stabbed Landa and did not recognize Garcia; and (3) Vanessa Landez, a customer at the club on the night of the stabbing, did not "see anyone get stabbed."

Although Garcia correctly asserts that Johnson denied that Garcia was the person he saw hit Landa, Johnson did acknowledge that he chose Garcia's picture from a photo array. While Garcia did produce some evidence contrary to the verdict, it does not outweigh the evidence supporting the verdict. Additionally, the circumstantial evidence is sufficient to support Garcia's conviction. *See Hooper*, 214 S.W.3d at 13; *Guevara*, 152 S.W.3d at 49.

Therefore, viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that it was Garcia who caused Landa's death. *See Hooper*, 214 S.W.3d at 13; *Escamilla*, 143 S.W.3d at 817. Viewing the evidence in a neutral light, we further conclude that the evidence is not so weak that the jury's verdict seems clearly wrong and manifestly unjust, and that the jury's verdict is not against the great weight and preponderance of the evidence. *Watson*, 204 S.W.3d at 414-15. We conclude that the evidence is legally and factually sufficient to establish Garcia was the person who stabbed Landa. We overrule Garcia's first, second, and third issues.

6

### III. Motion to Suppress

By his fourth issue, Garcia contends that the trial court erred in denying his motion to suppress the pre-trial photographic lineup identification made by Johnson and the subsequent identification testimony at trial. Specifically, Garcia argues that the pre-trial photographic lineup procedure was impermissibly suggestive and gave rise to substantial likelihood of irreparable misidentification.

### A. Standard of Review and Applicable Law

We review a trial court's decision on a motion to suppress evidence for abuse of discretion. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006); *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002). In reviewing the trial court's decision, we view the record in the light most favorable to the trial court's ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). We afford almost total deference to the trial court's determination of the historical facts that the record supports. *Id.*

The pre-trial identification procedure may be so unnecessarily suggestive and conducive to mistaken identification that the admission of the identification at trial would deprive a defendant of due process of law. *Conner v. State*, 67 S.W.3d 192, 200 (Tex. Crim. App. 2001). In order to determine the admissibility of a pre-trial identification, we apply the following two-step analysis: (1) whether the pretrial identification procedure was impermissibly suggestive; and (2) whether it created a substantial likelihood of irreparable misidentification. *Conner*, 67 S.W.3d at 200. A pre-trial identification may be considered suggestive based on the manner in which the procedure is conducted. *Barley v. State*, 906 S.W.2d 27, 33-34 (Tex. Crim. App. 1995). "[A] finding that a challenged pretrial identification procedure was not in fact impermissibly suggestive will obviate the need to

assay whether under the circumstances it created a substantial likelihood of misidentification." *Webb v. State*, 760 S.W.2d 263, 269 (Tex. Crim. App. 1988).

## B. Analysis

Garcia argues that the pre-trial photo lineup was impermissibly suggestive because Johnson testified that he felt "pushed to identify someone,"[3] and because Investigator Trevino told him that Garcia's photo represented "the suspect" and that the police were "looking at [Garcia]."

During a pre-trial hearing on Garcia's motion to suppress Johnson's pre-trial identification of Garcia, Johnson was asked, "Okay. Now, did anyone in any way suggest to you who the suspect was in these photos." Johnson answered, "No," explaining that he picked Garcia although he was not one hundred percent sure that Garcia was the suspect.

During trial, Johnson again denied that Investigator Trevino suggested the identification of the suspect. However, on re-direct by the State, Johnson changed his testimony and claimed that Investigator Trevino did indirectly suggest that he choose Garcia's photo. *See Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996). Investigator Trevino testified that, after asking Johnson if he remembered the person he had described for the composite, he handed Johnson the lineup and asked him to review it. After studying the composite sketch for a few minutes, Johnson identified Garcia. Investigator Trevino testified that he did not tell Johnson which photo depicted the suspect until after Johnson chose the photo. He also asserted that he neither showed Johnson photos of the victim nor threatened him with negative treatment if he did not cooperate.

---

[3] At the suppression hearing, Johnson stated that he felt pressured to pick someone because Investigator Trevino made comments such as, ". . . I know you know who–who this was[,]" and "[j]ust go ahead and pick somebody out."

Viewing the evidence in the light most favorable to the trial court's ruling, the record supports the trial court's finding that the pretrial identification procedure was not impermissibly suggestive.[4] *See State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *see also Webb*, 760 S.W.2d at 269. Therefore, we conclude that the trial court did not abuse its discretion in denying Garcia's motion to suppress Johnson's pre-trial identification of Garcia and the subsequent identification testimony at trial. We overrule Garcia's fourth issue.

## IV. ADMISSION AND LIMITATION OF EVIDENCE

By his fifth, sixth, seventh, and eight issues, Garcia complains of the admission of certain exhibits and testimony and of the limitation of other testimony.

A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *Shuffield v. State*, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006). The test, to determine if the trial court has abused its discretion, is whether the court acted without reference to any guiding rules and principles or if the action was arbitrary or unreasonable. *Lyles v. State*, 850 S.W.2d 497, 502 (Tex. Crim. App. 1993).

### A. Admission of the State's Photographic Exhibits

By his fifth issue, Garcia contends that the trial court violated his rights to due course of law under Article I, section 19 of the Texas Constitution by admitting State's Exhibits 25, 31, 32, and 33 because the State lost the knife allegedly used to murder

---

[4] We need not address Garcia's contention that the pretrial identification procedure created a substantial likelihood of misidentification because it was not impermissibly suggestive. *See Webb v. State*, 760 S.W.2d 263, 269 (Tex. Crim. App. 1988).

Landa.[5] The State counters that Garcia did not object and therefore failed to preserve error.

In order to preserve error for review on appeal, the defendant must make a specific, timely objection, and receive an adverse ruling at trial. TEX. R. APP. P. 33.1(a); *Jaynes v. State*, 216 S.W.3d 839, 850 (Tex. App.—Corpus Christi 2006, no pet.). "Even constitutional errors may be waived by failure to object at trial." *Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990); *see Heidelberg v. State*, 144 S.W.3d 535, 542-43 (Tex. Crim. App. 2004) (holding that state constitutional issues are not preserved even when counsel's complaint at trial relied on federal grounds). Furthermore, the legal basis of the complaint raised on appeal must comport with the complaint raised at trial. *Heidelberg*, 144 S.W.3d at 537; *Butler v. State*, 872 S.W.2d 227, 236 (Tex. Crim. App. 1994).

When the State offered exhibit 25 into evidence, defense counsel stated that he had no objection to its admission. Because Garcia did not make a specific, timely objection and receive an adverse ruling at trial, he has not preserved error as to exhibit 25. *See* TEX. R. APP. P. 33.1(a); *Jaynes*, 216 S.W.3d at 850. Furthermore, when the State offered exhibits 31, 32, and 33 into evidence, defense counsel objected on the grounds that (1) the State was not able to establish the chain of custody, and (2) under the best evidence rule, the original should have been produced. Garcia did not object to these exhibits on state constitutional grounds, the legal basis he raises on appeal. Therefore, Garcia did not preserve error as to exhibits 31, 32, and 33. *See Heidelberg*, 144 S.W.3d at 538; *Butler*, 872 S.W.2d at 236. We overrule Garcia's fifth issue.

---

[5] State's exhibits 31, 32, and 33 are pictures of a knife allegedly used to stab Landa, and State's exhibit 25 is a picture of another knife found near the night club where Landa was stabbed.

10

## B. Limitation of Cross-Examination

By his sixth issue, Garcia contends that the trial court denied him the right to confront a witness as guaranteed by the state and federal constitutions when it limited his cross-examination of Gonzalez. Garcia claims he was prohibited from cross-examining her about an unadjudicated capital murder charge.

While evidence of unadjudicated crimes is not admissible to show a witness's bad character for truthfulness; it may be admissible to show a witness's bias or interest in the particular case. *Moreno v. State*, 22 S.W.3d 482, 485-86 (Tex. Crim. App. 1999). However, a party may cross-examine a witness on an unadjudicated offense only to show bias because of vulnerability to the prosecution, not to discredit the witness. *Maxwell v. State*, 48 S.W.3d 196, 199 (Tex. Crim. App. 2001) (citing *Alford v. U.S.*, 282 U.S. 687, 693 (1931)). Specifically, evidence that a witness is subject to a pending criminal charge, on probation, or on deferred adjudication probation is relevant to demonstrate any possible bias or interest that she "may hold to testify on the State's behalf." *See id.* at 199.

During a hearing outside the presence of the jury, defense counsel argued that cross-examination of Gonzalez regarding a prior unadjudicated criminal charge should be allowed because it would expose her bias in favor of the State. Although defense counsel admitted she was unaware of the circumstances surrounding Gonzalez's prior unadjudicated criminal charge, she maintained that " out of a sense of gratitude" Gonzalez may be biased in favor of the State. The State responded that the unadjudicated criminal charge was no longer pending and that it was prohibited from prosecuting Gonzalez on that charge in the future.

11

Garcia, as the proponent of the evidence, had the burden of showing that the evidence was relevant. *See Carpenter v. State*, 979 S.W.2d 633, 634 (Tex. Crim. App. 1998). However, Garcia did not show a nexus between Gonzalez's expected testimony and her potential motive to testify for the State. *Woods v. State*, 152 S.W.3d 105, 111 (Tex. Crim. App. 2004) (providing that a logical connection may exist when the witness is placed in a vulnerable position and may have a motive to testify in favor of the State). He did not establish that Gonzalez was subject to pending criminal charges, was on probation, or was on deferred adjudication demonstrating a possible bias or interest that she "may hold to testify on the State's behalf." *See Maxwell*, 48 S.W.3d at 199. Without such a showing, there was nothing to suggest that Gonzalez's testimony would be relevant to the charges against appellant. *See Carpenter*, 979 S.W.2d at 635 (concluding that appellant did not provide any indication that pending federal charges were relevant to potential bias). Therefore, we conclude that the trial court did not abuse its discretion in prohibiting Garcia from cross-examining Gonzalez on her prior unadjudicated charge. We overrule Garcia's sixth issue.

## C. Gang Affiliation

By his seventh issue, Garcia contends that the trial court erred in allowing evidence of his alleged gang affiliation because it was not relevant and was unfairly prejudicial. *See* TEX. R. EVID. 401, 402, 403, 404(b).

Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401. Nevertheless, relevant evidence may be excluded under rule 404(b) if it is evidence of other crimes, wrongs, or acts that is

only admitted to prove that a person acted in conformity therewith. Tᴇx. R. Eᴠɪᴅ. 404(b). As a general rule, evidence of gang affiliation falls within the rule 404(b) exclusion of "other crimes, wrongs or acts" used to show character conformity. *See Pondexter v. State*, 942 S.W.2d 577, 583 (Tex. Crim. App. 1996). However, evidence of gang affiliation is admissible for other purposes, such as proof of motive, intent, or identity. Tᴇx. R. Eᴠɪᴅ. 404(b); *see Williams v. State*, 974 S.W.2d 324, 331 (Tex. App.–San Antonio 1998, pet. ref'd.) (finding that evidence of defendant's gang affiliation was admissible to prove motive). Whether evidence is relevant under rule 404(b) is a question for the trial court that "must conclude that the evidence tends in logic and common experience to serve some purpose other than character conformity to make the existence of a fact of consequence more or less probable than it would be without the evidence." *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim App. 1990) (op. on reh'g). The "appellate court owes no less deference to the trial judge in making this judgment than it affords him in making any other relevancy call." *Id.* (providing that "as long as the trial court's ruling was at least within the zone of reasonable disagreement[,]" we will uphold it).

In this case, the State's theory of the offense was that Garcia and Freddy Llamas, who was at the club on the night of the stabbing with his girlfriend Landez, were members of a gang called the Tri-City Bombers. Landez testified that she was arguing with Llamas when Landa intervened and pushed Llamas. The State theorized that Garcia, along with other members of the Tri-City Bombers, retaliated.

We conclude that the evidence of Garcia's gang affiliation was relevant to show his motive and intent, rather than mere conformity with character; therefore, it was admissible. *See* Tᴇx. R. Eᴠɪᴅ. 401, 402, 404(b); *see also Vasquez v. State*, 67 S.W.3d 229, 239 (Tex.

13

Crim. App. 2002) (holding gang affiliation evidence is relevant to show motive for a gang-related crime); *Montgomery*, 810 S.W.2d at 389-90.

Having concluded that the evidence is relevant, we will now determine whether it was unfairly prejudicial. *See* TEX. R. EVID. 403. In doing so, we consider the following: (1) the weight of the probative evidence; (2) the potential of the evidence to impress the jury in some irrational, but nevertheless indelible way; (3) the proponent's need for the evidence; and (4) the length of time the proponent needs to develop the evidence. *Montgomery*, 810 S.W.2d at 389-90.

In this case, evidence of Garcia's gang affiliation had substantial probative value because it was relevant to prove Garcia's motive for the stabbing. Furthermore, the State had a great need for the evidence to prove its theory that Garcia retaliated against Landa because he pushed a fellow gang member. Finally, the time needed to develop the evidence was brief. Although we recognize that evidence of gang membership may be prejudicial, *see Galvez v. State*, 962 S.W.2d 203, 206 (Tex. App.–Austin 1998, pet. ref'd) (holding that gang evidence is highly prejudicial at the guilt/innocence stage), we conclude the trial court did not abuse its discretion in determining the evidence in this case was more probative than prejudicial. *See Montgomery*, 810 S.W.2d at 391. We overrule Garcia's seventh issue.

### D. Hearsay

By his eighth issue, Garcia contends that the trial court erred by allowing "backdoor hearsay" testimony. Specifically, Garcia complains of out-of-court statements made by Gonzalez that led investigators to determine that Garcia was responsible for the stabbing, that a knife was used, and the location of the knife.

14

"Hearsay is a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d).  However, "[t]he trial judge has no duty to exclude [hearsay] on his own, and . . . [o]nce admitted without objection, such evidence enjoys a status equal to that of all other admissible evidence. . . ."  *Poindexter v. State*, 153 S.W.3d 402, 409 (Tex. Crim. App. 2005) (quoting *Marin v. State*, 851 S.W.2d 275, 278 (Tex. Crim. App. 1993)); *see* TEX. R. EVID. 802 ("Inadmissible hearsay admitted without objection shall not be denied probative value merely because it is hearsay.").  Furthermore, an objection to hearsay evidence must be made every time the inadmissible evidence is offered.  *Geuder v. State,* 115 S.W.3d 11, 13 (Tex. Crim. App. 2003).  We review the trial court's admission of evidence, including hearsay, under an abuse of discretion standard.  *Apolinar v. State*, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005); *see McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005).

Although Garcia complains that the trial court allowed the State to elicit "backdoor hearsay" testimony from Investigator Rogers that Garcia was responsible for the stabbing, that a knife was used, and the location of the knife, the record reflects that Garcia only objected to the State's question regarding the type of weapon used.  Furthermore, Investigator Rogers later testified, without objection, that he expected to find a "knife that was possibly used in the homicide" when he went to the Chapa Street address.  Because Garcia did not object at trial to the testimony that he now complains of on appeal, and did not object every time the alleged "backdoor hearsay" was elicited, we conclude that he did not preserve error.  *See* TEX. R. APP. P. 33.1(a); *Lane v. State*, 151 S.W.3d 188, 193 (Tex.

15

Crim. App. 2004); *Geuder v. State*, 115 S.W.3d at 13 (Tex. Crim. App. 2003); *Ethington v. State*, 819 S. W.2d 854, 858 (Tex. Crim. App. 1991); *Jaynes*, 216 S.W.3d at 850.

Furthermore, the State elicited similar evidence, without objection, through Gonzalez's testimony.  Therefore, error, if any, was cured.  *See Lane*, 151 S.W.3d at 193 ("An error if any in the admission of evidence is cured where the same evidence comes in elsewhere without objection."); *Jaynes*, 216 S.W.3d at 850 ("A trial court's erroneous admission of evidence will not require reversal when other such evidence was received without objection, either before or after the complained-of ruling.") (citing *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998)).  We overrule Garcia's eighth issue.

## V. CONCLUSION

We affirm the trial court's judgment.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Memorandum Opinion delivered and
filed this 6th day of November, 2008.