NUMBER 13-06-00587-CR 



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


CAREY LEE CRAMER, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 370th District Court 

of Hidalgo County, Texas.

 


MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Rodriguez and Benavides 


Memorandum Opinion by Justice Rodriguez



 Appellant, Carey Lee Cramer was convicted of indecency with a child by contact,
indecency with a child by exposure, and aggravated sexual assault of a child regarding 
E.B. See Tex. Penal Code Ann. § 21.11(a)(1), (2) (Vernon 2003), § 22.021(a)(2) (Vernon
Supp. 2008). He was also convicted of indecency with a child by contact regarding S.M. 
See id. § 21.11(a)(2). Cramer challenges the trial court's judgment by the following ten
issues: (1) the evidence was legally insufficient to support his conviction for aggravated
sexual assault; (2) the evidence was factually insufficient to support his conviction for
aggravated sexual assault; (3) the trial court erred by denying his motion for instructed
verdict; (4) the trial court erred by finding the outcry statement made by E.B. to S.W. to be
reliable; (5) the trial court erred by finding the outcry statement made by S.M. to M.M. to
be reliable; (6) the trial court erred by limiting his cross-examination of S.W. during the
outcry reliability hearing; (7) the trial court erred in denying his request to conduct a voir
dire examination of Lynn Tyson, an expert witness for the State; (8) the trial court erred by
denying him a 705(b) hearing under the Texas Rules of Evidence to investigate the
underlying facts or data upon which Tyson based her opinions; (9) the trial court erred by
limiting his cross-examination of Tyson; and (10) the trial court erred by denying his motion
for mistrial. We affirm.

I. Background

 In 2004, S.W. called the Tucson, Arizona Police Department and reported that 
Cramer had sexually abused her eleven-year-old daughter, E.B. After interviewing E.B.,
Detective Johnny Walker of the Tucson Police Department informed the McAllen Police
Department that Cramer may have sexually abused E.B. in Hidalgo County, Texas.

 Cramer was subsequently arrested for sexually abusing E.B. and S.M., S.W.'s little
sister, and charged with the following offenses: (1) aggravated sexual assault of a child,
E.B., (counts one, four, five, six, seven, and eight); (2) indecency with a child by sexual
contact of S.M. (count two); (3) indecency with a child by sexual contact of E.B. (count
three); and (4) indecency with a child, E.B., by exposure (count nine). A jury found Cramer
guilty of counts two, four, and nine. The trial court placed Cramer on ten years' community
supervision for counts two, three, and nine, to run concurrently with a sentence of six years'
imprisonment for count four. This appeal ensued.

II. Sufficiency of the Evidence

 By his first and second issues, Cramer contends that the evidence was legally and
factually insufficient to support a conviction of aggravated sexual assault of a child because
the evidence failed to establish beyond a reasonable doubt that Cramer caused his sexual
organ to penetrate E.B.'s sexual organ. By his third issue, Cramer contends that the trial
court erred by denying his motion for instructed verdict. We address Cramer's first and
third issues together because a challenge to the trial court's ruling on a motion for
instructed verdict is a challenge to the legal sufficiency of the evidence. See McDuff v.
State, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997) (en banc); Cantu v. State, 944 S.W.2d
669, 670 (Tex. App.-Corpus Christi 1997, pet. ref'd) (citing Cook v. State, 858 S.W.2d 467,
470 (Tex. Crim. App. 1993); Rodriguez v. State, 888 S.W.2d 211, 214 (Tex. App.-Corpus
Christi 1994, no pet.)).

A. Standard of Review and Applicable Law

 In conducting a legal sufficiency review, we view the relevant evidence in the light
most favorable to the verdict to determine whether a rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt. Hooper v. State, 214
S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson v. Virginia, 443 U.S. 307, 318-19
(1979)); Escamilla v. State, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004). We do not re-evaluate the weight and credibility of the evidence, and we do not substitute our own
judgment for the trier of fact. King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000)
(en banc); Beckham v. State, 29 S.W.3d 148, 151 (Tex. App.-Houston [14th Dist.] 2000,
pet. ref'd). Instead, we consider whether the jury reached a rational decision. Beckham,
29 S.W.3d at 151.

 In a factual sufficiency review, we review the evidence in a neutral light to determine
whether the evidence is so weak that the jury's verdict seems clearly wrong and manifestly
unjust or the jury's verdict is against the great weight and preponderance of the evidence. 
Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). This Court will not
reverse the jury's verdict unless we can say, with some objective basis in the record, that
the great weight and preponderance of the evidence contradicts the verdict. Id. at 417.

 Both legal and factual sufficiency are measured by the elements of the offense as
defined by a hypothetically correct jury charge. Malik v. State, 953 S.W.2d 234, 240 (Tex.
Crim. App. 1997); Adi v. State, 94 S.W.3d 124, 131 (Tex. App.-Corpus Christi 2002, pet.
ref'd). Under a hypothetically correct jury charge, a person commits the offense of
aggravated sexual assault of a child if he intentionally or knowingly causes his sexual
organ to penetrate the sexual organ of a child younger than fourteen years of age. See
Tex. Penal Code Ann. § 22.021(a)(2)(B) (Vernon Supp. 2008).

 The testimony of a child victim alone is sufficient to support a conviction for
aggravated sexual assault. Tex. Code Crim. Proc. art. 38.07 (Vernon 2005); see Garcia
v. State, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978). The victim's description of what
occurred does not need to be precise, and wide latitude is given to the testimony of a child
victim of sexual abuse. Villalon v. State, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990) (en
banc). Penetration may be proved by circumstantial evidence, and there is no requirement
that the child victim be able to testify as to penetration. Id. at 133. Moreover, the slightest
penetration is sufficient to uphold a conviction if it is proven beyond a reasonable doubt. 
Sherbert v. State, 531 S.W.2d 636, 637 (Tex. Crim. App. 1976); Rhynes v. State, 479
S.W.2d 70, 72 (Tex. Crim. App. 1972).

B. Analysis Cramer complains that E.B.'s testimony that he did not penetrate her vagina with
his penis in Hidalgo County is contrary to the verdict. However, "[p]enetration between the
labia of the female's private parts by the male sexual organ of the defendant is sufficient
although the vagina was not entered or an act of intercourse was never completed." 
Sherbert, 531 S.W.2d at 637; see Vernon v. State, 841 S.W.2d 407, 409 (Tex. Crim. App.
1992) (en banc) (providing that contact with the female sexual organ in a manner a
reasonable person would consider more intrusive than contact with the outer vaginal lips
constitutes penetration). Because wide latitude is given to the testimony of a child victim
of sexual abuse, see Villalon, 791 S.W.2d at 134, the jurors could have inferred that
Cramer penetrated E.B.'s labia with his penis in Hidalgo County based on her testimony
that in McAllen, Texas, Cramer put "jellyish stuff" on her vagina, "inserted" or "rubbed" his
penis on her sexual organ until he ejaculated, and told her, "It's almost in[,]" even though
E.B.'s vagina was not entered or an act of intercourse was never completed. See
Sherbert, 531 S.W.2d at 637; Vernon, 841 S.W.2d at 409 ("[P]ushing aside and reaching
beneath a natural fold of skin into an area of the body not usually exposed to view, even
in nakedness, is a significant intrusion beyond mere external contact."); Karnes v. State,
873 S.W.2d 92, 96 (Tex. App.-Dallas 1994, no pet.) ("Touching beneath the fold of the
external genitalia amounts to penetration within the meaning of the aggravated sexual
assault statute.").

 Viewing the evidence in the light most favorable to the verdict we conclude that a
rational trier of fact could have found beyond a reasonable doubt, see Hooper, 214 S.W.3d
at 13; Escamilla, 143 S.W.3d at 817, that Cramer caused his sexual organ to penetrate
E.B.'s sexual organ in Hidalgo County. See Sherbert, 531 S.W.2d at 637; Rhynes, 479
S.W.2d at 72; see also Everage v. State, 848 S.W.2d 357, 358 (Tex. App.-Austin 1993,
no pet.) (per curiam) ("'Female sexual organ' is a more general term that refers to the entire
female genitalia, including both the vagina and the vulva."). Furthermore, viewing the
evidence in a neutral light, we conclude that the evidence is not so weak that the jury's
verdict seems clearly wrong and manifestly unjust and that the jury's verdict is not against
the great weight and preponderance of the evidence. Watson, 204 S.W.3d at 414-15. We
overrule Cramer's first, second, and third issues.

III. Outcry Testimony

 In his fourth and fifth issues, Cramer contends that the trial court abused its
discretion by admitting the outcry testimony of S.W. and M.M. S.W. testified as a witness
regarding E.B.'s outcry statement, while M.M. testified as a witness regarding S.M.'s outcry
statement. (1)

 A trial court's decision to admit or exclude evidence is reviewed under an abuse of
discretion standard. Oprean v. State, 201 S.W.3d 724, 726 (Tex. Crim. App. 2007). We
should uphold the trial court's judgment unless the trial court's decision lies outside the
"zone of reasonable disagreement." Id.

 Article 38.072 of the Texas Code of Criminal Procedure provides a hearsay
exception permitting the State to introduce statements made by a child against whom an
offense was allegedly committed and describes the proper outcry witness as "the first
person, 18 years of age or older, other than the defendant, to whom the child made a
statement about the offense." Tex. Code Crim. Proc. Ann. art. 38.072 § 2(a)(2) (Vernon
2005). In order to be admissible, the child's statement to the outcry witness must describe
the alleged offense in some discernible manner and "must be more than words which give
a general allusion that something in the area of child abuse was going on." Garcia v.
State, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990) (en banc).

 Before admitting the outcry testimony pursuant to article 38.072, the trial court must
conduct a hearing outside the presence of the jury to determine if the statement is reliable
"based on the time, content and circumstances of the statement." Tex. Code Crim. Proc.
Ann. art. 38.072 § 2(b)(2). The determination of the admissibility of an outcry statement
is left to the broad discretion of the trial court, and the trial court's findings will be upheld
so long as they are supported by the record. Castelan v. State, 54 S.W.3d 469, 475 (Tex.
App.-Corpus Christi 2001, no pet.) (citing Garcia, 792 S.W.2d at 92).

 Cramer argues that E.B.'s statements to S.W. "did not relay any specific details
about the charged offense," therefore, the trial court should have determined that the
statements were nothing more than general allusions that something sexual was occurring
and not a clear description of the offense charged. It is undisputed that S.W. was the first
person, 18 years of age or older, that E.B. told about the offense. Outside the presence
of the jury, S.W. testified that after watching a television show about sexual abuse, she
asked her daughter E.B., who was eleven at the time, whether Cramer "had ever done
anything sexual or inappropriate to her." According to S.W., E.B. answered "Yes," and
stated that Cramer started showing her "pictures of men and women together and then
women and women doing sexual acts together on the computer." S.W. also testified that
E.B. told her that Cramer made her perform oral sex on him, that he performed oral sex
on her, and that Cramer put his fingers inside of her. S.W. explained that E.B. did not use
the terms oral sex, but that E.B. said that she "sucked on him" and that he "licked her." 
According to S.W., E.B. claimed that these things happened when they lived in Mercedes
and when they lived in McAllen. E.B. also told S.W. that Cramer went into her bedroom
after she had showered, pushed her onto the bed, tried to put his penis inside of her, and
stopped when she started crying.

 Based on S.W.'s testimony, the trial court could have concluded that E.B. described
the alleged offenses in a discernable manner. Therefore, due to the broad discretion
afforded trial courts in the determination of who is a proper outcry witness, Id. at 475, we
cannot say that the trial court's decision to admit S.W.'s outcry testimony under article
38.072 lies outside the "zone of reasonable disagreement." Oprean, 201 S.W.3d at 726. 
We overrule appellant's fourth issue.

 We next consider the outcry testimony provided by M.M. M.M. testified that, after
"[E.B.] had given me some information," she suspected that "something may have
happened" to S.M. M.M. asked S.M. if anything had happened to her while she was with
Cramer. S.M. told her that when she visited S.W. and E.B. in McAllen, Texas, a few
months before the family moved to Arizona, Cramer had "played around" with her. S.M.
also told M.M. that, after she and E.B. took a bath, Cramer asked her to wear "a little skirt"
and that they were "going to play tickling." According to S.M., "one girl would hold the other
one down" while Cramer tickled her. S.M. told M.M. that Cramer put his hand "underneath
her panties" and touched her "private parts" while he was tickling her. M.M. testified that
S.M. was very nervous when she told M.M. about the alleged abuse and that S.M. stated
she had been afraid to tell M.M. about the incident.

 Cramer argues that the trial court abused its discretion by determining M.M.'s
testimony was reliable, "given that the allegations were not reported for some time, over
two years," and that when the allegations were finally reported, "[CPS] did not find the
statements reliable enough to follow through." 

 In determining the reliability of a statement "based on the time, content and
circumstances" in which it is made, as required by section 2(b)(2) of article 38.072 of the
Texas Code of Criminal Procedure, the phrase "time, content, and circumstances" refers
to "the time the child's statement was made to the outcry witness, the content of the child's
statement, and the circumstances surrounding the making of that statement." Tex. Code 
Crim. Proc. Ann. art. 38.072 § 2(b)(2); Broderick v. State, 89 S.W.3d 696, 699 (Tex.
App.-Houston [1st Dist.] 2002, pet. ref'd). The focus of the inquiry must remain upon the
outcry statement. Broderick, 89 S.W.3d at 699.

 Focusing on S.M.'s outcry statement, the trial court could have concluded that it was
reliable based on M.M.'s testimony. Therefore, due to the broad discretion afforded trial
courts in the determination of who is a proper outcry witness, Castelan, 54 S.W.3d at 475,
we cannot say that the trial court's decision to admit M.M.'s outcry testimony under article
38.072 lies outside the "zone of reasonable disagreement." Oprean, 201 S.W.3d at 726. 
We overrule appellant's fifth issue.

 In his sixth issue, Cramer contends that the trial court deprived him of "his right to
confront, cross examine, and adequately test the reliability of the outcry statement(s)" by
limiting his cross-examination of S.W. during the "outcry reliability hearing." Cramer sought
to question S.W. regarding her state of mind and her actions after E.B. made her outcry
statement. However, S.W.'s actions after E.B.'s outcry were not relevant to the reliability
of E.B.'s statement. Therefore, because Cramer's questions were outside the narrow
scope of the inquiry into the time, circumstances, or content of the outcry statement, the
trial court did not abuse its discretion by limiting Cramer's cross-examination of S.W. See
id. (providing that the trial court's decision to limit cross-examination is not subject to
reversal absent a showing of a clear abuse of discretion). We overrule Cramer's sixth
issue.

IV. Expert Witness Testimony By his seventh issue, Cramer contends that the trial court erred by denying his
request to conduct a voir dire examination of Lynn Tyson, the State's expert witness.

 Under Texas Rule of Evidence 705(b), before an expert witness gives an opinion
or discloses the underlying facts or data upon which she relied, "a party against whom the
opinion is offered upon request in a criminal case shall . . . be permitted [out of the hearing
of the jury] to conduct a voir dire examination directed to the underlying facts or data upon
which the opinion is based." Tex. R. Evid. 705(b). The purpose of such a voir dire
examination is to explore the facts and data underlying the expert's opinions. See id.;
Jenkins v. State, 912 S.W.2d 793, 814 (Tex. Crim. App. 1995) (op. on reh'g). Improper
denial of a rule 705(b) hearing is subject to a harmless error analysis. Goss v. State, 826
S.W.2d 162, 168 (Tex. Crim. App. 1992); see Alba v. State, 905 S.W.2d 581, 588 (Tex.
Crim. App. 1995) (en banc) (providing that even if the trial court had erred in denying a
705(b) hearing, such error was "clearly harmless").

 Cramer requested a 705(b) hearing to determine the underlying facts or data upon
which Lynn Tyson's opinion was based. The trial court denied his request and allowed
Tyson to testify as an expert witness. Assuming without deciding that the trial court erred,
we determine whether the error was "so harmful as to require a reversal." See Goss, 826
S.W.2d at 168.

 Although Cramer argues that he was "forced" to discover the facts and underlying
information that Tyson relied upon "in generating her conclusions and preparing her
testimony," Cramer has not outlined what he could have learned from the voir dire
examination of Tyson that was not already known. Cramer had been provided with a copy
of Tyson's therapy session notes, which formed the basis of her opinion. In her notes,
Tyson documented her treatment of E.B. Therefore, because Cramer was provided with
a copy of the notes, we conclude the underlying facts and data that formed the basis of
Tyson's opinion were made known to Cramer. Jenkins, 912 S.W.2d at 814 (finding that
appellant knew the underlying facts or data because appellant had copies of the expert's
evaluations of him that formed the basis of the expert's opinions); Alba, 905 S.W.2d at 588. 
Furthermore, Cramer does not refer this Court to any inadmissible evidence that was
offered into evidence in the presence of the jury. See Goss, 826 S.W.2d at 168 (Rule
705(b) allows the opposing party the opportunity to explore the basis of the expert's
opinions without fear of eliciting damaging hearsay or other inadmissible evidence in the
presence of the jury); see also McBride, 862 S.W.2d at 609; Vasquez v. State, 819 S.W.2d
932, 935 (Tex. App.-Corpus Christi 1991, pet. ref'd) (Rule 705(b) allows the party not
calling the expert to explore the basis for the opinions without having the jury exposed to
otherwise inadmissible data).

 Moreover, although Cramer complains, without citing to the record, that Tyson's
testimony was "replete with hearsay," similar evidence was introduced, without objection, 
earlier in the trial through E.B.'s testimony. See Lane v. State, 151 S.W.3d 188, 193 (Tex.
Crim. App. 2004) ("An error if any in the admission of evidence is cured where the same
evidence comes in elsewhere without objection."); Jaynes v. State, 216 S.W.3d 839, 850
(Tex. App.-Corpus Christi 2006, no pet.) ("A trial court's erroneous admission of evidence
will not require reversal when other such evidence was received without objection, either
before or after the complained-of ruling.") (citing Leday v. State, 983 S.W.2d 713, 718
(Tex. Crim. App. 1998)). Therefore, we cannot say that the trial court's refusal to conduct
a 705(b) hearing "was so harmful as to require a reversal." See Goss, 826 S.W.2d 162 at
168. We overrule Cramer's seventh issue.

 By his eighth issue, Cramer complains that the trial court erred in denying his
request for a mistrial on the basis that he was denied the opportunity to review the
underlying facts and/or data upon which Tyson based her opinion. Specifically, Cramer
complains that the trial court denied him access to materials Tyson allegedly relied upon
in reaching her conclusions and preparing for her testimony. However, a review of the
record shows that Cramer based his motion for mistrial on the right to confrontation under
the Sixth Amendment and not on his inability to review the underlying facts and data upon
which Tyson based her opinion. Because the basis of Cramer's complaint on appeal
regarding the trial court's error in denying his request for mistrial does not comport with the
basis raised in the trial court, Cramer has waived error. See Tex. R. App. P. 33.1(a)(1)(A);
Heidelberg v. State, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004); Bell v. State, 938
S.W.2d 35, 54-5 (Tex. Crim. App. 1996); see also Reyna v. State, 168 S.W.3d 173, (Tex.
Crim. App. 2005) (providing that the issue is "whether the complaining party on appeal
brought to the trial court's attention the very complaint that party" makes on appeal). We
overrule Cramer's eighth issue.

V. Limitation of Cross-Examination

 By his ninth issue, Cramer contends that the trial court erred by limiting his cross-examination of Tyson regarding domestic violence. Specifically, Cramer argues that the
trial court refused to allow him to cross-examine Tyson as to her motive and bias for
testifying against him.

 The right to cross-examination is the primary interest protected by the confrontation
clause. See U.S. Const. amend. VI; Shelby v. State, 819 S.W.2d 544, 546 (Tex. Crim.
App. 1991) (en banc). In exercising that right, a defendant has broad latitude to pursue
avenues of questioning "reasonably calculated to expose motive, bias, or interest for the
witness to testify." Carroll v. State, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996) (en banc);
Hurd v. State, 725 S.W.2d 249, 252 (Tex. Crim. App. 1987) (en banc). The ability to
expose a witness's motivation to testify against a defendant is a "proper and important
function of the constitutionally protected right of cross-examination." Hurd, 725 S.W.2d at
252 (quoting Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986)). "[A] criminal defendant
states a violation of the Confrontation Clause by showing that he was prohibited from
engaging in otherwise appropriate cross-examination designed to show a prototypical form
of bias on the part of the witness." Shelby, 819 S.W.2d at 546. However, parameters of
cross-examination remain within the sound discretion of the trial court, which must balance
probative value against prejudicial risks including undue prejudice, embarrassment,
harassment, confusion of the issues, and undue delay. Chambers v. State, 866 S.W.2d
9, 26-27 (Tex. Crim. App. 1993) (en banc); see Van Arsdall, 475 U.S. at 679. The trial
court's determination is only reversible if the appellant shows a clear abuse of discretion. 
Chambers, 866 S.W.2d at 27.

 Prior to trial, the court granted the State's motion in limine, which requested that
Cramer not inquire about acts of domestic violence during the course of the marriage of
Cramer and S.W. However, during direct examination, Tyson testified about incidents of
domestic violence. She stated:

 There were constant-there was a lot of domestic violence between the
mother [S.W.] and the step-father [Cramer]. . . . And then there were some
incidents where there was some violence between [Cramer] and
[E.B.]. . . .  [Cramer] slapped [S.W.] across the face. . . . [Cramer] closed the
[car] window on [S.W.'s] arm and wouldn't let her out.


After this testimony, Cramer "requested leave to further inquire about what Tyson did to
verify this information" and to "test whether Tyson knew about situations in which the
opposite occurred." The trial court denied Cramer's request.

 As the proponent of evidence of bias, Cramer was required to show that the
evidence was relevant "by demonstrating that a nexus, or logical connection, exist[ed]
between the witness's testimony and the witness's potential motive to testify in favor of the
other party." Woods v. State, 152 S.W.3d 105, 111 (Tex. Crim. App. 2004) (providing that
a logical connection may exist when the witness is placed in a vulnerable position and may
have a motive to testify in favor of the State). Here, Cramer does not reveal a potential
motive for Tyson to have testified in favor of the State; Cramer does not assert that Tyson
would have benefitted from her testimony; and, Cramer does not explain how his questions
would have demonstrated Tyson's potential motive. Therefore, Cramer has not
demonstrated that a logical connection existed between Tyson's testimony that there was
domestic violence in the family and any possible motive for Tyson to testify for the State. 
See id. We conclude that Cramer has not shown that the trial court clearly abused its
discretion when it denied Cramer's request to cross-examine Tyson regarding domestic
violence. We overrule Cramer's ninth issue.

VI. Extraneous Acts

 By his tenth issue, Cramer contends that the trial court should have granted his
motion for mistrial because the State failed to give him prior notice of its intent to introduce
evidence of extraneous crimes and/or bad acts under Texas Rule of Evidence 404(b).

 The State has a duty to provide "reasonable notice" of intent to introduce certain
extraneous offenses upon the defendant's request. Mitchell v. State, 982 S.W.2d 425, 427
(Tex. Crim. App. 1998). In order to request reasonable notice, the defendant may either
file a discovery motion with the trial court or file a request of notice directly with the State. 
Espinosa v. State, 853 S.W.2d 36, 38-39 (Tex. Crim. App. 1993) (en banc) (per curiam). 
If the request is served directly on the State, it is self-executing, and no further action is
required by the trial court. Id. at 38. However, if a defendant files a motion requesting
court action, the State's duty to provide reasonable notice is not triggered until the trial
court rules on the motion. Mitchell, 982 S.W.2d at 427; Espinosa, 853 S.W.2d at 38
(holding that "when a defendant relies on a motion for discovery to request notice pursuant
to Rule 404(b), it is incumbent upon him to secure a ruling on his motion in order to trigger
the notice requirements of that rule").

 Here, the record shows that Cramer filed a pre-trial discovery motion with the trial
court. Having pursued his 404(b) notice through a motion addressed to the trial court, it
was Cramer's burden to obtain a ruling on his motion. See Mitchell, 982 S.W.2d at 427;
Espinosa, 853 S.W.2d at 38. Because Cramer did not secure a ruling, the State was not
required to give notice. See Mitchell, 982 S.W.2d at 427; Espinosa, 853 S.W.2d at 38. 
We overrule Cramer's tenth issue.

V. Conclusion

 We affirm the trial court's judgment.

 

 NELDA V. RODRIGUEZ

 Justice


Do not publish. 

Tex. R. App. P. 47.2(b).


Memorandum Opinion delivered and 

filed this 20th day of November, 2008.
1. In his brief, Cramer asserts that M.M. also testified as an outcry witness regarding E.B.'s statement. 
However, based on our review of the record, the trial court only admitted M.M. as an outcry witness regarding
S.M.'s statement. Therefore, Cramer's complaint is without merit.