NUMBER 13-99-716-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

__________________________________________________________________


ALBERTO GONZALEZ CASTELAN, Appellant,


v.


THE STATE OF TEXAS, Appellee.

__________________________________________________________________


On appeal from the 92nd District Court of Hidalgo County, Texas.

__________________________________________________________________


O P I N I O N

Before Justices Hinojosa, Yañez, and Chavez (1)

Opinion by Justice Yañez



Appellant, Alberto Gonzalez Castelan, appeals a conviction of aggravated sexual assault of a child. We affirm the
judgment of the trial court. 

BACKGROUND

Appellant lived in a house he shared with his wife and her son, the victim of the assault now being appealed. On
September 6, 1998, appellants' wife witnessed the victim (2) throw a glass of water at appellant. Appellant then grabbed the
victim and proceeded to repeatedly and aggressively spank him. Judging the force of the spankings as excessive, appellant's
wife separated the two. The victim told his mother that because appellant would grab the victim's buttocks, he did not want
to be in the house with appellant and wished to go to the house of his maternal grandmother. Appellant's wife confronted
appellant about the child's accusations, which he denied. Appellant's wife and the victim subsequently drove to her
mother's house, where she left the victim. Upon her return home, appellant's wife was verbally harassed by appellant, who
was apparently intoxicated, referring to the victim in a lewd and sexually explicit manner. 

The following day, appellant continued to verbally harass his wife before she left for work. When she arrived at work,
appellant's wife called her son and told him not to go anywhere with appellant. Furthermore, she disclosed to her mother,
the victim's grandmother, what the victim had told her the previous night and instructed her mother to seek help. After
speaking with her daughter, the victim's grandmother discussed the allegations with the victim. The victim told the
grandmother that appellant would "put his thing in through the back." However, the grandmother noticed that the victim
was noticeably nervous and did not further question him. After hearing the statements of both appellant's wife and the
victim, the grandmother called the McAllen Police Department, who informed her that based on what appellant's wife and
the victim told her, they lacked jurisdiction over the case, and she would have to contact the Pharr Police Department. 
Later that night, appellant's wife returned home from work by herself, once again leaving the victim with her mother. 
Appellant's wife asked appellant about his relationship with the victim. Appellant responded by comparing his wife's
sexual performance with that of her son. Appellant also offered his wife money in order for her to bring her son back,
threatening to harm both her and her son if she left him and allowed someone else to "have" the victim. 

On September 8, 1998, the grandmother accompanied the victim to school and met with the school counselor, Yolanda
Heartfield. (3) The grandmother relayed to Heartfield what she was told by both appellant's wife and the victim, and then
left the victim with Heartfield so as to allow the victim to feel free to express himself. Heartfield assured the victim that his
statements would be confidential, and that no harm would come to him for speaking to her. Shortly thereafter, the victim
spoke in detail regarding various instances of sexual and physical abuse. After her session with the victim, Heartfield told
the grandmother, without disclosing the details of her conversation with the victim, that she was going to contact Child
Protective Services ("CPS") and explain what had happened to the victim. A case worker from CPS later contacted the
Pharr Police Department to notify them of the allegations of abuse which occurred in their jurisdiction. 

On September 9, 1998, the victim, appellant's wife, the CPS worker, Heartfield, and some members of the Pharr Police
Department met in Heartfield's office. Appellant's wife, Heartfield, and the victim were separately interviewed, first by the
CPS worker, and later by the police officers. At the conclusion of the interviews, the police officers informed appellant's
wife that in order for appellant to be arrested, she would need to go to the police station and give an official statement. 
Upon arriving at the police station, appellant's wife and the victim were taken into separate rooms and interviewed. 
Investigator Aurora Salinas interviewed the victim in her office, typing his statement as he spoke to her. After appellant's
wife finished giving her statement, she witnessed the victim sign his statement. Shortly thereafter, Investigator Gilbert
Guerrero prepared an arrest warrant, using as a template, a previous arrest warrant saved on a computer, inserting the
current date and name of appellant. However, Guerrero failed to delete the name of the individual for whom the previous
arrest warrant was originally obtained. Thus, the warrant accused one individual of aggravated sexual assault, but
authorized the arrest of another individual, the appellant. The warrant and attached complaint were taken to a Pharr
municipal judge by Salinas, who witnessed the judge look over documents and sign the arrest warrant. 

Before appellant was arrested, appellant's wife gave Salinas the key to her house and written consent to search it. At the
time of his arrest, appellant did not appear to be intoxicated or under the influence of any substance, and was arrested
without incident. Appellant was taken to the Pharr Police Station, where he was booked and placed in a cell. The
following morning, Salinas removed appellant from his cell and took him to an office down the hall for questioning. In the
office, with Guerrero observing, Salinas advised appellant of his rights (4) in Spanish. (5) Appellant was given a copy of his
rights in Spanish, initialing each right after it was read to him by Salinas, indicating that he understood each right. Initially,
when being questioned by Salinas, appellant denied the charges of abuse. However, after a period of time, Guerrero began
to speak with appellant in a conversational manner, and appellant began discussing issues related to this case. As appellant
spoke in Spanish, Salinas began typing his statement, translating it into English as she typed. (6) In his statement, appellant
admitted to sexually abusing the victim on one occasion.

Upon the completion of the statement, two records clerks, Aida Bustamonte and Olivia Garcia, were called into the office
to witness appellant sign his statement. Bustamonte read appellant his rights in Spanish, with appellant once again
initialing each right after she read it to him. Bustamonte translated the statement back to Spanish, after which appellant
stated that he understood what was contained in the statement and signed it. 

On June 30, 1999, following a jury trial, appellant was convicted on the charge of aggravated sexual assault of a child, and
was sentenced to a term of twenty-five years imprisonment in the Institutional Division of the Texas Department of
Criminal Justice.

ISSUES PRESENTED

On appeal, appellant presents two issues by way of seven points of error. In points of error one through three, appellant
argues that the trial court erred in permitting Yolanda Heartfield to testify as the outcry witness. In his next four points of
error, appellant argues that the trial court erred in admitting the statement made by appellant while in the custody of the
Pharr Police Department. 

OUTCRY WITNESS TESTIMONY

Outcry statements are those out-of-court statements made by a victim detailing alleged instances of abuse. Under the Texas
Code of Criminal Procedure, outcry statements are admissible at trial if the statements were made: 1) by the child against
whom the offense was allegedly committed; and 2) to the first person, 18 years of age or older, other than the defendant, to
whom the child made a statement about the offense. Tex. Code Crim. Proc. Ann. art. 38.072, §2(a) (Vernon Supp. 2001). 
Appellant's sole challenge involves the identification of the outcry witness, not whether the state complied with the
procedural aspects of the statute. See Tex. Code Crim. Proc. Code Ann. art. 38.072, §2(b) (Vernon Supp. 2001).

At trial, the State offered the school counselor as its outcry witness. Appellant contends that because the victim's
grandmother was the first person the victim told that he was being abused, she, not the school counselor, is the proper
outcry witness. A trial court's findings will be upheld when they are supported by the evidence, and a trial court has broad
discretion in determining the admissibility of such evidence. Garcia v. State, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990). 
The determination of the trial court as to the proper outcry witness will not be disturbed absent a showing in the record that
the trial court clearly abused its discretion. Id. An outcry witness must be the first individual over the age of eighteen to
whom the child makes a statement that in some discernible manner describes the alleged offense. Garcia, 792 S.W.2d at
91; Rodriguez v. State, 997 S.W.2d 640, 642 (Tex. App.-Corpus Christi 1999, no pet.). The statement must be more than
mere words which give the general allusion that something in the area of child abuse was going on. Garcia, 792 S.W.2d at
91; Villalon v. State, 805 S.W.2d 588, 592 (Tex. App.-Corpus Christi 1991, no pet.). 

The facts surrounding the instant case are quite similar to those arising in Sims v. State, 12 S.W.3d 499 (Tex. App.-Dallas
1999, pet. ref'd). In Sims, the court affirmed the trial court's determination that the family services counselor, not the
victim's mother, qualified as the outcry witness. Id. at 500. The Simscourt held that, although the victim's mother was the
first person the victim told about the abuse, the family services counselor was the first person to whom the victim relayed
specific details regarding the alleged abuse, thereby meeting the statutory definition of an outcry witness. Id. In the case
now before this Court, the victim did not relay specific details of the abuse to his grandmother, only stating that appellant
"put his thing in through the back." However, in the interview with Heartfield, the victim described the alleged incidents of
abuse in great detail, going so far as to show the school counselor where and how appellant abused him. The victim's
grandmother testified that she perceived the victim to be nervous and did not inquire as to any specific details. We find that
the trial court did not abuse its discretion by allowing Heartfield to testify as the outcry witness.

We overrule points of error one through three. 

APPELLANT'S ARREST AND SUBSEQUENT STATEMENT

We review the trial court's admission of evidence under an abuse of discretion standard. Montgomery v. State, 810 S.W.2d
372, 378 (Tex. Crim. App. 1990). Reviewing courts "should afford almost total deference to a trial court's determination of
historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of
credibility and demeanor." Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).Admissibility of Statement
under Article 15.02

Appellant argues that the trial court erred in admitting his statement because it was the fruit of an illegal arrest. 
Specifically, appellant contends that the arrest warrant was defective and, therefore his statement made following his arrest
is inadmissible. While we do agree with appellant that the arrest warrant was defective, we find that appellant's statement
is cured of any taint from the illegal arrest, and thus, the trial court did not err in admitting his statement at trial.

On September 9, 1998, appellant was taken into custody pursuant to an arrest warrant prepared by Investigator Gilbert
Guerrero and signed by Pharr Municipal Judge Roel Garcia. The arrest warrant presented to Judge Garcia appeared as
follows:

"WHEREAS, on the 31ST day of JULY 1998 Complaint under oath in writing has been made before me, charging that in
City and State, LAWRENCE BENAVIDEZ did commit the offense of AGGRAVATED SEXUAL ASSAULT 
TPC 22.021 FIRST DEGREE FELONY made and provided, and against the laws [sic] peace, and dignity of the State (and
against the Ordinances of the City of Pharr, Texas).



THESE ARE THEREFORE TO COMMAND YOU to arrest the said ALBERTO CASTELAN and immediately bring
him/her before the Judge of the Municipal Court in the City of Pharr, Texas to answer said complaint.



WHEREIN FAIL NOT, but due service and return make of this Writ as the law directs.



WITNESS my signature and seal of office, this 09th day of SEPTEMBER, 1998."



On its face, the warrant accuses one individual, Lawrence Benavidez, (7) of committing a crime, while directing the police to
arrest appellant. At trial, Guerrero testified that the discrepancy on the warrant resulted from his use of a prior arrest
warrant saved in a Pharr Police Department computer. Guerrero further testified that in his haste to prepare the arrest
warrant, he failed to delete all references to Benavidez. However, Guerrero characterized the error as typographical, the
result of a clerical mistake on his part.

Under the Texas Code of Criminal Procedure, an arrest warrant "shall be sufficient, without regard to form, if it has these
substantial requisites:" 1) it must specify the name of the person whose arrest is ordered; 2) it must state that the person is
accused of some offense against the laws of the State, naming the offense; and 3) it must be signed by the magistrate, and
his office be named in the body of the warrant, or in connection with his signature. Tex. Code Crim. Proc. Ann. art. 15.02
(Vernon 1977). 

Typographical errors, such as those regarding dates or times, do not automatically invalidate a warrant. Champion v. State,
919 S.W.2d 816, 818 (Tex. App.-Houston [14th Dist.] 1996, pet. ref'd). Reviewing courts may, on questions relating to the
descriptive facts supporting a determination of probable cause, look at the supporting affidavit for answers. Green v. State,
799 S.W.2d 756, 760 (Tex. Crim. App. 1990). The courts have consistently held that a typographical error on a warrant
will not taint the arrest or the fruits of that arrest. Green, 799 S.W.2d at 757. Additionally, the courts have held that
warrants authorizing the arrest of unnamed individuals are valid if they provide, as required by the statute, a reasonable and
as specific as possible description of the accused. Tex. Code Crim. Proc. Ann. art. 15.02 (Vernon 1977). The policy
justifying the admission of warrants with typographical errors can be found in an intent to uphold "the purpose behind the
warrant requirement, and provide protection for those to whom the issue on appeal is not one based upon the substantive
issue of probable cause but of technical default by the state." Green, 799 S.W.2d at 757-58. However, because the warrant
alleges the commission of the offense by the wrong individual, and fails to inform the arrested individual of the charges
against him, we find this error to be substantive rather than typographical. 

The purpose of stating the offense on an arrest warrant is to provide notice to the person being taken into custody of the
charges alleged against him. Jones v. State, 568 S.W.2d 847, 853 (Tex. Crim. App. 1978); Woods v. State, 14 S.W.3d 445,
449 (Tex. App.-Fort Worth 2000, no pet.); Ellis v. Glasgow, 168 S.W.2d 946, 947-48 (Tex. Civ. App.-San Antonio 1943,
no pet.). The arrest warrant in the case now before this Court, by failing to list the party to be arrested as the person
accused of committing the alleged offense, does not properly inform appellant of the basis for the arrest. This Court notes
that errors in arrest warrants similar to those found in the present case, unlike pure typographical errors, impact
constitutional rights. For example, in the present case, had the error resulted in the wrong name being placed in the "arrest"
blank, the police would have been directed to arrest Benavidez, an action which, if performed, would have been in no way
justified. The rights of citizens are paramount and cannot be infringed by law enforcement officials in their pursuit of
justice.

Thus, the warrant used to arrest appellant was illegal. However, a statement given after an illegal arrest may still be
admissible if the stain of illegality can be cleansed by evidence demonstrating that the statement was voluntary and not a
product of the illegal arrest. Brown v. Illinois, 422 U.S. 590, 598-99 (1975); Owens v. State, 875 S.W.2d 447, 451 (Tex.
App.-Corpus Christi 1994, no pet.). Specifically, to determine whether the statement was sufficiently voluntary, courts
must consider: 1) whether Mirandawarnings were given; 2) the time lapse between the arrest and the confession; 3) the
presence of intervening circumstances; and 4) the purpose and flagrancy of the official misconduct. Brown, 422 U.S. at
603-05; Owens 875 S.W.2d at 451. No one factor is dispositive in making a determination of admissibility. Juarez v.
State, 758 S.W.2d 772, 780 (Tex. Crim. App. 1988); Darden v. State, 783 S.W.2d 239, 243 (Tex. App.-Corpus Christi
1989, pet. ref'd). 

In his pretrial motions, appellant filed a motion to suppress his statement on the grounds that it was the result of an illegal
arrest. At the suppression hearing, the prosecution bears the burden of showing that appellant's statement was admissible. 
Brown, 422 U.S. at 604. Applying the Brown factors, we find that the prosecution did meet its burden.

Under the Brown test, the first factor requires that the prosecution show that appellant was properly informed of his
Miranda rights. (8) Investigator Aurora Salinas testified that she read appellant his Mirandarights prior to questioning him,
and she also witnessed Aida Bustamonte, a records clerk, read appellant his Miranda rights prior to appellant signing his
statement. Furthermore, Salinas testified that she witnessed appellant initial each right after it was read to him, indicating
that he understood each right. However, the recitation of Miranda rights, regardless of the number of times they are read to
the accused, is by itself insufficient to break the causal connection between the illegality and the statement. Brown, 422
U.S. at 603; Taylor v. Alabama, 457 U.S. 687, 691 (1982). 

The second factor under Brown examines the time period between appellant's arrest and his statement. While the record is
not clear as to the exact time of appellant's arrest, it can be inferred that he was apprehended in the late afternoon or early
evening hours of September 9, 1998. (9) Appellant was not questioned until the next morning, September 10, 1998, signing
his statement at 9:45 a.m. We find appellant was in custody long enough to attenuate the temporal proximity between the
statement and the illegal arrest. However, the temporal proximity of the arrest and statement is not a determinate factor,
and is traditionally given the least amount of credence among the Brown factors. Bell v. State, 724 S.W.2d 780, 788 (Tex.
Crim. App. 1986); Owens 875 S.W.2d at 452. When analyzing the proximity of the arrest and statement, courts will look
more to the intervening circumstances during the period between arrest and the statement rather than merely focusing on
the amount of time that has elapsed. Juarez, 758 S.W.2d at 782 (citing Rawlings v. Kentucky, 448 U.S. 98 (1980)). 

The third Brown factor requires courts to consider any intervening circumstances which might have compelled appellant to
give his statement to the police. An intervening circumstance "need not occur after the arrest, but rather, it must manifest
itself so as significantly to intervene and thus attenuate the taint of an illegal arrest" by breaking any causal effect between
the illegal arrest and the statement of the accused. Foster v. State, 677 S.W.2d 507, 509 (Tex. Crim. App. 1984) (emphasis
in original). Salinas testified that after the appellant's arrest, he was handed over to the booking officer and placed in a cell
for the evening. The next morning, appellant was taken into an office and questioned by Salinas and Guerrero. Salinas
testified that to her knowledge, nothing occurred in the time between appellant's arrest and the signing of his statement. 
The lack of any intervening factors between the time of the arrest and the time of the statement militates against a finding
of attenuation and in favor of an appellant. Garcia v. State, 3 S.W.3d 227, 242 (Tex. App.-Houston [14th Dist.] 1999)
aff'd, 43 S.W.3d 527 (Tex. Crim. App. 2001). 

The final factor under Brown directs the court to determine the purpose and flagrancy of the official misconduct. Of the
four factors listed in Brown, the level of official police misconduct is perhaps the most important factor to consider. Bell,
724 S.W.2d at 789. The greater the degree and flagrancy of the police misconduct, the greater the difficulty in breaking the
causal chain between the illegal arrest and the accused's subsequent statement. Id. at 789-90. In the present case, while the
failure of the Pharr Police Department to ensure accuracy in the preparation of the arrest warrant is deplorable, it does not
constitute exceedingly flagrant and malicious misconduct. The statements of appellant's wife and the victim provided
probable cause and proper justification for appellant's arrest. Furthermore, Salinas testified, and it was not disputed in the
record, that the errors on the arrest warrant resulted not from a desire to deprive appellant of his constitutional rights, but
rather, from his haste to prepare the warrant to ensure appellant did not flee into Mexico. 

Thus, because appellant's arrest was procured through a faulty arrest warrant, we find that his arrest was illegal. However,
by complying with the requirements in Brown v. Illinois, appellant's statement was admissible during the trial. From the
time that appellant was arrested to the time that he signed his statement, there were no intervening circumstances that
removed the taint of illegality from appellant's arrest. However, because the degree and flagrancy of the police misconduct
was minimal, the causal chain was attenuated by notifying appellant of his Miranda rights and considering the passage of
time between appellant's arrest and the signing of his statement.

Admissibility of Statement Under Article 38.22

Appellant also argues that his statement was inadmissible because it violated article 38.22, section 2(b) of the Texas Code
of Criminal Procedure in that prior to and during the making of the statement, appellant failed to "knowingly, intelligently,
and voluntarily" waive his article 38.22, section 2(a) rights. See Tex. Code Crim. Proc. Ann. art. 38.22, §2(b) (Vernon
1977). The waiver presented to appellant appeared as follows: (10)

Notification of Your Rights

Before we ask you any questions, you have to have knowledge of your

rights. 

1. You have the right to remain silent.

2. Anything you say can be used against you in a trial.

3. You have the right to an attorney before you answer any questions and you have the right to have him present with you
during the interrogation.

4. If you do not have the monetary means to hire an attorney, one will be assigned to you before you're asked any questions,
if you desire that.

5. If you decide that you want to answer some questions without the presence of an attorney, you still have the right to
terminate the interview at any moment. You also have the right to terminate the interview at any moment until you consult
an attorney.

The person to whom the rights were given to (Signed by Appellant) Officer who gave the rights 
Renouncing of Rights

I have read this declaration of my rights and I know my rights. I am willing to give a declaration and answer all questions. 
I don't want the presence of an attorney at this moment. I understand and know what I am doing. No one has made any
promises, threats, or have placed any pressure against me. 

Appellant contends that because the waiver of rights on his statement failed to include the exact words "knowingly,"
"intelligently," or "voluntarily," it did not meet the requirements of article 38.22, and therefore should not have been
admitted.

An accused's signed waiver of rights on a written statement need not contain the exact verbal sequence "knowingly,
intelligently, and voluntarily" as long as the waiver substantially complies with the legislative intent of section 2(b). 
Garcia v. State, 919 S.W.2d 370, 386-87 (Tex. Crim. App. 1994). A warning which is only slightly different from the
language of the statute but which conveys the exact meaning of the statute, is sufficient to comply with the statute. Sosa v.
State, 769 S.W.2d 909, 916 (Tex. Crim. App. 1989). The statute requires that before a written statement made by an
accused is admissible as evidence against him, it must show on its face the accused, "prior to, and during the making of the
statement, knowingly, intelligently, and voluntarily waived" his rights. Tex. Code Crim. Proc. Ann. art. 38.22, §2(b)
(Vernon 1979). The final paragraph of the statement demonstrates that appellant knowingly, intelligently, and voluntarily
waived his rights. Appellant, who can read Spanish, initialed each of the section 2(a) rights as they appeared above the
waiver of those rights, which was written in Spanish, indicating that he understood each one of those rights. Additionally,
appellant signed a statement declaring that he waived his rights and understood what he was doing. Appellant's waiver also
stated that there were no promises made in exchange for his statement. Although appellant's waiver did not list the words
"knowingly," "intelligently," or "voluntarily," it is clear that these requirements were met, adhering to the legislative intent
of section 2(b). Thus, the statement was valid, and the trial court was within its discretion to deny appellant's motion to
suppress.

We overrule points of error four through seven.

We AFFIRM the judgment of the trial court.

 

LINDA REYNA YAÑEZ

Justice




Publish. Tex. R. App. P. 47.3.

Opinion delivered and filed this the

9th day of August, 2001.

1. Retired Justice Melchor Chavez assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to
Tex. Gov't Code Ann. § 74.003 (Vernon 1998).

2. At the time, the victim was six years old.

3. The grandmother testified at trial that she had taken the victim to see Heartfield at the beginning of the 1998-1999 school
year because she had noticed that "the child was a little odd."

4. Appellant was read the rights listed in Texas Code of Criminal Procedure article 38.072, section 2(a):

(1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against
him at his trial;

(2) any statement he makes may be used as evidence against him in court;

(3) he has the right to have a lawyer present to advise him prior to and during any questioning; 

(4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to any questioning;
and

(5) he has the right to terminate the interview at any time.



Tex. Code Crim. Proc. Code Ann. art. 38.072, §2(a) (Vernon 1979).

5. Appellant does not speak or understand English.

6. The statement signed by appellant was in English. Salinas testified at trial that appellant's statement contains the exact
English equivalents of the words used by appellant when making his statement in Spanish. 

7. Guerrero testified at trial that Lawrence Benavidez had previously been arrested on a DWI charge. 

8. The rights read to appellant were those listed in the Texas Criminal Procedure Code, article 38.22, section 2(a) which
meet the constitutional requirements of Miranda v. Arizona. See Tex. Code Crim. Proc. Ann. art. 38.072, §2(a) (Vernon
1979). 

9. Salinas testified that when she and Guerrero completed interviewing the victim and his mother, respectively, the time
was around 5:00 P.M. Guerrero also testified that he and Salinas were told by appellant's wife that should appellant find
out that she and the victim were with the police, appellant would flee into Mexico. Thus, Guerrero stated that he sought to
procure the warrant and arrest appellant as quickly as possible.

10. The rights and waiver of those rights were given to appellant in Spanish, and were translated into English during trial by
Salinas.