

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

___

No. 07-17-00104-CR

___

JOSE MANUEL FUENTES, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

___

On Appeal from the 54th District Court
McLennan County, Texas
Trial Court No. 2015-1343-C2, Honorable Matt Johnson, Presiding

___

February 8, 2019

## MEMORANDUM OPINION

### Before QUINN, C.J., and CAMPBELL and PARKER, JJ.

Appellant Jose Manuel Fuentes appeals from his convictions by jury of two counts of aggravated sexual assault of a child[1] and one count of indecency with a child[2] and the resulting sentences of imprisonment for life and a $10,000 fine for each of the assault counts and ten years and a $10,000 fine for the indecency with a child count. Appellant challenges his convictions through three issues. We affirm.

___

[1] TEX. PENAL CODE ANN. § 22.021 (West 2018).

[2] TEX. PENAL CODE ANN. § 21.11 (West 2018).

## Background

The first two counts of the grand jury's indictment alleged appellant intentionally or knowingly caused the anus of G.G., a child under the age of fourteen, to contact appellant's sexual organ. The third count alleged appellant, with the intent to arouse or gratify the sexual desire of any person, intentionally or knowingly exposed his genitals knowing that G.G., a child younger than seventeen years of age, was present.

At the time of trial, G.G. was fifteen years old. The charges against appellant stemmed from events G.G. said occurred when she was five and six years old.

G.G.'s mother began living with appellant in 2001, when G.G. was two or three months old. They later married. G.G. has two brothers, one older and one younger. The younger brother is the child of G.G.'s mother and appellant.

Reginald Lewis, a CPS investigator, testified at trial that in 2007, he responded to a referral regarding G.G. Lewis spoke with school personnel who expressed concern over G.G.'s absence from school. G.G.'s brother told Lewis G.G. was at home and was very ill. When Lewis visited the home, he spoke with G.G. and her mother. He saw a mark on G.G.'s forehead. G.G. told Lewis the mark was caused by a "whopping" by appellant. When Lewis investigated further, appellant told Lewis he was frustrated because he saw G.G. put her hands down her brother's pants while he was driving the children home. He said he spanked G.G. because he did not believe she took his concerns seriously. Lewis told the jury G.G. did not make an outcry despite his questions to her about possible sexual abuse. He also noted G.G. was not hesitant to speak with him during the investigation.

2

The children were removed from the home in 2007 and sent to live with their maternal grandmother in Fort Worth. In 2009, appellant pled guilty to injury of G.G. He was imprisoned as a result of that plea. The mother visited appellant twice and she and the children spoke with appellant on the phone. The mother eventually went to live with her mother and the children in Fort Worth. When released from prison, appellant was permitted supervised visits with the children.

Several other witnesses testified to their interactions with G.G. and the other children. Among those witnesses were a police officer, a CPS investigators supervisor, two conservatorship workers, and G.G.'s attorney ad litem. All of them testified that G.G. never made an outcry of sexual abuse to them.

The mother and appellant divorced in 2010. The mother married a man who had a daughter, A.H., nine months younger than G.G. The two shared a room. A.H. testified that one day while the girls were sitting on the floor using their tablets, G.G. told her appellant "raped" her. She described it in her forensic interview by saying G.G. said appellant put his "d-i-c-k" in her "butt." A part of A.H.'s forensic interview was admitted into evidence by agreement.

In early March 2014, G.G. also told J.S., a male friend a year older than she, about the "rape" in messages the two exchanged over a mobile application called "KIK." During their sexually-charged message-exchange, G.G. told J.S. she was not a virgin because appellant had "raped" her from the ages of "four to eleven." She later admitted she sneaked out of the house that night to meet J.S. after their exchange. In her forensic

interview, A.H. told the interviewer G.G. told her that G.G. and J.S. "dry humped" that night.[3]

The events that led immediately to appellant's prosecution began when G.G.'s mother saw, on G.G.'s tablet, the KIK conversation with J.S., including what G.G. said appellant had done to her. The mother testified that after reading the conversation, she called CPS, police, and a doctor. A nurse testified the mother told her she brought G.G. for an exam because she read that G.G. had been raped six years before. The exam revealed no signs of a hymen tear. When asked by the prosecution whether she had any concerns about the delayed outcry even though it was made in the "context of sexual behavior" with J.S., Waco detective Kimberly Clark testified she did not.

In her trial testimony, G.G. said "she had been raped" by appellant when she was five and six years old. She described two incidents. In the first, she was five years old. She said she and her brothers were playing a game. Appellant asked her to come into the bedroom. She complied and he closed the door, told her to take off her clothes, and had her lie face down on the bed. He put his "private part" inside her "butt." He threatened to beat her if she told anyone. In the second incident, she was six years old. She said she was getting toys out of a closet and appellant came in, took her clothes off, and had her lie face down on the bed. She saw appellant's "private part" and it was "sticking up." He then put his "private part" inside her "butt" as he had on the previous occasion.

Dr. Kerry Burkley, program director of Waco Children's Advocacy Center, testified to his forensic interview of G.G. after G.G.'s mother contacted police. Telling the jury

---

[3] A.H. described "dry humping" as "humping with clothes on."

4

about the incidents G.G. relayed to him, he described the events much as G.G. did in her testimony.

Dr. Ann Sims conducted an exam of G.G. in October 2014. Her written report of that exam was admitted into evidence. Her description of what G.G. told her about appellant's assaults was consistent with the descriptions provided by the other witnesses. The exam revealed only an anal fissure more consistent with constipation than with sexual abuse. Sims noted, however, it would be unlikely that any physical evidence would be found, given the lapse of time since the alleged abuse.

Appellant also testified. He acknowledged his previous criminal history, including his 2009 guilty plea for injury to G.G. He insisted he did not sexually assault G.G., that he had no sexual contact with her and that he never exposed himself to G.G.

Analysis

Issue One—Outcry Testimony

In appellant's first issue, he contends the trial court abused its discretion by admitting the entirety of Dr. Burkley's testimony under the outcry statute. He asserts G.G. first described the aggravated sexual assaults to her mother, who thus was the proper outcry witness for those offenses. For that reason, he argues, the court should not have permitted Burkley to testify to G.G.'s statements about the assaults.[4] Appellant contends this error harmed him.

_____

[4] In his appellate brief, appellant says Burkley was, "at most," a proper outcry witness as to the indecency of a child count.

Article 38.072

Article 38.072 of the Texas Code of Criminal Procedure creates a statutory exception to the general rule excluding hearsay testimony. TEX. CODE CRIM. PROC. ANN. art. 38.072 (West 2018). The statute applies only to statements made by the child against whom the offense was allegedly committed and to the first person, eighteen years of age or older, other than the defendant, to whom the child made a statement about the offense. TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a). "[O]utcry testimony admitted in compliance with article 38.072 is . . . admissible for the truth of the matter asserted in the testimony." *Duran v. State,* 163 S.W.3d 253, 257 (Tex. App.—Fort Worth 2005, no pet.) (citations omitted); *Sosa v. State*, No. 01-14-00157-CR, 2015 Tex. App. LEXIS 6504, at *10 (Tex. App.—Houston [1st Dist.] June 25, 2015, no pet.) (mem. op., not designated for publication) (citation omitted).

Outcry witness testimony is event-specific, not person-specific. *Canfield v. State,* No. 07-13-00161-CR, 2015 Tex. App. LEXIS 1694, at *9 (Tex. App.—Amarillo Feb. 19, 2015, no pet.) (mem. op., not designated for publication) (citation omitted). "That is, where more than one offense is being prosecuted, there may be more than one outcry statement and more than one outcry witness." *Id.* (citing *Robinett v. State*, 383 S.W.3d 758, 761-62 (Tex. App.—Amarillo 2012, no pet.)). In such situations, "each outcry statement must meet the requirements of article 38.072, and because designation of the proper outcry witness is event-specific, the outcry statements related by different witnesses must concern different events and not simply be the repetition of the same event told by the victim at different times to different individuals." *Id.* (citations omitted).

We review the admission of outcry testimony under an abuse of discretion standard. *Robinett,* 383 S.W.3d at 761 (citing *Garcia v. State,* 792 S.W.2d 88, 92 (Tex. Crim. App. 1990); *Martinez v. State,* 178 S.W.3d 806, 810 (Tex. Crim. App. 2005)). We will uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Id.* (citations omitted). The Tenth Court of Appeals[5] sometimes has described the outcry witness as the first adult to whom the child relates the "how, when, and where" of the offense. *Hanson v. State,* 180 S.W.3d 726, 730 (Tex. App.—Waco 2005, no pet). *See also Villanueva v. State,* 209 S.W.3d 239, 247-48 (Tex. App.—Waco 2006, no pet.) (finding there was no issue that arguably might support an appeal where the trial court could have concluded the victim did not tell the mother the "'how'—all of the details—of [the defendant's] conduct."); *Herrera v. State,* No. 10-05-00026-CR, 2005 Tex. App. LEXIS 9092, at *3-4 (Tex. App.—Waco Nov. 2, 2005, no pet.) (mem. op., not designated for publication) (citations omitted) (finding trial court did not abuse its discretion when it found the mother was not the proper outcry witness because the child told her only that the defendant "touched her" and did not tell her mother "any details about the 'how, when, and where'" of the assault). Other courts have described the outcry witness in like fashion. *See, e.g., Reyes v. State*, 274 S.W.3d 724, 727 (Tex. App.—San Antonio 2008, pet. ref'd) (citing *Hanson,* 180 S.W.3d at 730). The statement must describe the alleged offense in some discernible way and amount to "more than mere words which give a general allusion that something in the area of child abuse was going on." *Garcia*, 792 S.W.2d at 91. *See also Lopez v. State,* 343 S.W.3d 137, 140 (Tex. Crim. App. 2011) (same standard).

---

[5] Originally appealed to the Tenth Court of Appeals, this case was transferred to this court by the Texas Supreme Court. TEX. GOV'T CODE ANN. § 73.001(West 2018).

7

Harm

The erroneous admission of outcry testimony in violation of Article 38.072 is non-constitutional error. *Sosa,* 2015 Tex. App. LEXIS 6504, at *11-12 (citing TEX. R. APP. P. 44.2(b); *Johnson v. State,* 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)). Pursuant to Texas Rule of Appellate Procedure 44.2(b), "a non-constitutional error must be disregarded unless it affected the defendant's substantial rights, i.e., the error had a substantial and injurious effect or influence in determining the jury's verdict." *Id.* (citing TEX. R. APP. P. 44.2(b); *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011)). We will not overturn a criminal conviction for non-constitutional error if "we, after examining the record as a whole, have fair assurance that the error did not influence the jury, or influenced the jury only slightly." *Id.* (citing *Barshaw,* 342 S.W.3d at 93).

In evaluating the likelihood that the jury's decision was affected by the error, we consider "everything in the record, including factors such as the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, whether the State emphasized the error, and whether overwhelming evidence of guilt was present." *Sosa,* 2015 Tex. App. LEXIS 6504, at *11-12 (citing *Bagheri v. State*, 119 S.W.3d 755, 763 (Tex. Crim. App. 2003)). Any such error is also harmless if the same or similar evidence is admitted without objection at another point in the trial. *Id.* at *12 (citing *Nino v. State*, 223 S.W.3d 749, 754 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (holding error in designation of outcry witness under article 38.072 was harmless because similar testimony was admitted through child complainant and the mother); *Duncan v. State,* 95 S.W.3d 669, 672 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (holding improper admission of outcry

8

testimony was harmless because similar testimony was admitted through complainant, pediatrician, and medical records)).

Application

Appellant argues G.G.'s mother was the proper outcry witness because she was the first adult G.G. told and the description to her mother was sufficient to satisfy the requirements of article 38.072. In support of his argument that the mother, not Burkley, was the proper outcry witness, appellant also notes that Burkley's testimony was of a different quality because of his status as a forensic interviewer, he provided the jury more significant details of the alleged assaults, and his testimony served to bolster G.G.'s credibility, the central contested issue at trial. The other witnesses, appellant claims, merely repeated what G.G. told them and did not question her or seek to clarify her statements as did Burkley.

Outside the presence of the jury, G.G.'s mother testified that after she found G.G.'s KIK conversation on her tablet, she talked to G.G. G.G. told her appellant "raped her from the back, the back area." The mother said G.G. told her it happened twice but they "didn't get into details of how or what he did to her." The mother's statements are very similar to those made by the victim's grandmother in *Castelan v. State,* in which the grandmother testified the victim told her the defendant "put his thing in through the back" but provided no other details. 54 S.W.3d 469, 475 (Tex. App.—Corpus Christi 2001, no pet.). The court found that statement did not relay "specific details regarding the alleged abuse" as required by the outcry witness statute. *Id.* (citation omitted). We reach the same conclusion with regard to G.G.'s statements to her mother. *Id.; See also Lopez v. State,* No. 10-14-00402-CR, 2016 Tex. App. LEXIS 431, at *12-13 (Tex. App.—Waco

9

Jan. 14, 2016, no pet.) (mem. op., not designated for publication) (finding no abuse of discretion in conclusion forensic interviewer was proper outcry witness when victim's statements to her mother did not satisfy outcry requisites but more detailed statements to interviewer did; citing *Castelan*). Like the victim's statements to the school counselor in *Castelan,* G.G.'s statements to Burkley provided the description of appellant's alleged offenses missing from her statements to her mother. *See Castelan,* 54 S.W.3d at 75-76. Applying the "how, when, where" formula leads to the same conclusion. All three elements were absent from G.G.'s statements to her mother. *See Villanueva,* 209 S.W.3d at 247-48; *Herrera,* 2005 Tex. App. LEXIS 9092, at *3-4. Consequently, we cannot say the trial court's determination that the mother was not a proper outcry witness was outside the zone of reasonable disagreement.

Even if the trial court erred by determining Burkley to be the proper outcry witness, appellant was not harmed by the error. Dr. Sims and G.G. testified, without objection, to the acts of assault. Dr. Sims's written report detailing G.G.'s history and allegations against appellant was also admitted into evidence. Burkley's testimony regarding G.G.'s statements was substantially like that of other witnesses. And, with regard to his contention Burkley's testimony would have carried special weight with the jury, we say it is unlikely the jury would have given it more weight than the examining medical doctor's testimony and detailed written report. Given the similar evidence admitted from other sources, we are reasonably assured that any error in admitting Burkley's testimony as outcry testimony did not influence the jury's verdict in the assault counts or had but a slight effect. *Sosa,* 2015 Tex. App. LEXIS 6504, at *15 (citations omitted).

We resolve appellant's first issue against him.

Issues Two and Three—Exclusion of KIK Conversation and Browser History

In appellant's second and third issues, he contends the trial court abused its discretion by not admitting into evidence: (1) a print-out of other messages of a sexual nature contained within G.G.'s KIK conversation with J.S. the night she sneaked out of her house to meet him;[6] and (2) G.G's tablet internet browsing history.

As noted, the mother's reading of the KIK messages led to G.G.'s outcry of the sexual abuse by appellant. Appellant wanted the jury to see the print-out of the other text messages portraying the sexually-charged nature of the conversation because it was during that conversation that G.G. revealed the accusations against appellant. Part of appellant's defensive theory at trial was that G.G. was "bragging" about her sexual history to J.S. to encourage his sexual interest in her.[7] Appellant also wanted the jury to see evidence of the browser history from G.G.'s tablet, which he contends showed she had been viewing pornography around the time she sneaked out to meet J.S.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Johnson v. State,* No. 09-16-00241-CR, 2017 Tex. App. LEXIS 8267, at *13-14 (Tex. App.—Beaumont Aug. 30, 2017, no pet.) (mem. op., not designated for publication) (authenticity of KIK account) (citing *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010)). An abuse of discretion occurs only if the trial court's decision is

---

[6] Among the excluded messages from the KIK conversation was one in which G.G. said to J.S., "Omg Remember When We Planned to Fck" followed by "Lmao THEM DAYS."

[7] Appellant's counsel agreed with the trial court's summary of the argument, "So you're saying that her motivation for saying that she was raped is because she wanted to seem like it was okay for someone else to have sex with her?"

"so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Id.* (citing *Henley v. State*, 493 S.W.3d 77, 83 (Tex. Crim. App. 2016) (quoting *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008)). We may not substitute our own decision for that of the trial court. *Id.* at \*14 (citing *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003)). We will uphold an evidentiary ruling if it was correct on any theory of law applicable to the case. *Id.* (citing *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009)).

"The Sixth Amendment right to confront witnesses includes the right to cross-examine witnesses to attack their general credibility or to show their possible bias, self-interest, or motives in testifying." *Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009) (citing *Davis v. Alaska*, 415 U.S. 308, 316 (1974)). This right is not unqualified and the trial court "has wide discretion in limiting the scope and extent of cross-examination." *Id.* (citations omitted). As a general matter, "the right to present evidence and to cross-examine witnesses under the Sixth Amendment does not conflict with the corresponding rights under state evidentiary rules." *Id.* (citation omitted). Accordingly, "most questions concerning cross-examination may be resolved by looking to the Texas Rules of Evidence." *Id.*

However, a "state's latitude in promulgating rules and a trial court's discretion in restricting witness examination have limits and may not infringe upon a weighty interest of the accused." *Juan v. State,* No. 04-15-00770-CR, 2017 Tex. App. LEXIS 6384, at \*8-9 (Tex. App.—San Antonio July 12, 2017, pet. ref'd) (mem. op., not designated for publication) (citing *Holmes v. South Carolina*, 547 U.S. 319, 324-25 (2006)). One of "those 'weighty interests' is the right to present a complete defense." *Id.* (citing *Holmes*,

547 U.S. at 324; *Easley v. State,* 424 S.W.3d 535, 540 (Tex. Crim. App. 2014)). "A criminal defendant has a constitutional right to present a complete and meaningful defense at trial, and is denied that right when a 'trial court's clearly erroneous ruling results in the exclusion of admissible evidence that forms the vital core of a defendant's theory of defense and effectively prevents him from presenting that defense.'" *Id.* (citing *Easley,* 424 S.W.3d at 540). "Each Confrontation Clause issue must be weighed on a case-by-case basis, carefully taking into account the defendant's right to cross-examine and the risk factors associated with admission of the evidence." *Id.* (citing *Lopez v. State,* 18 S.W.3d 220, 222 (Tex. Crim. App. 2000)).

Appellant contends the trial court, in violation of the Sixth Amendment, unduly limited his right to cross-examine G.G. when it denied his request to admit the other sexually-oriented messages contained within the KIK conversation and denied his request to admit the browser history taken from G.G.'s tablet.

In response, the State correctly points out the court did not limit appellant's questioning of G.G. on cross examination. After a hearing outside the presence of the jury regarding the KIK messages, the court placed no limitations on appellant's ability to question G.G. about her message exchange with J.S. Appellant cross examined G.G. regarding statements she made to him, including her statement indicating she was not a virgin because she had been "raped by her stepfather."

Appellant contends the print-out of the KIK message exchange was admissible to impeach G.G.'s testimony under rule of evidence 613. TEX. R. EVID. 613. The State contends appellant failed to ask G.G. the questions necessary to establish the required predicate for admission of the print-out as impeachment evidence. *See, e.g., Flowers v.*

13

*State,* 438 S.W.3d 96, 103 (Tex. App.—Texarkana 2014, pet. ref'd) (citations omitted) (describing requirements to establish the proper predicate for impeachment testimony).

After review of the record, we find we need not evaluate the print-out's admissibility. Even if the trial court erred by excluding it, we find appellant was not harmed. The erroneous exclusion of evidence under the Texas Rules of Evidence usually constitutes non-constitutional error, and any alleged harm is therefore reviewed under Rule 44.2(b) of the Texas Rules of Appellate Procedure. *Juan*, 2017 Tex. App. LEXIS 6384, at *11; *see also* TEX. R. APP. P. 44.2(b) (error, defect, irregularity, or variance that does not affect substantial rights must be disregarded). The only exception is when the excluded evidence "forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense." *Juan,* 2017 Tex. App. LEXIS 6384, at *11-12 (citations omitted). Erroneous exclusion of evidence could amount to a constitutional violation and in that case, harm would be reviewed under Rule 44.2(a), which applies to constitutional errors. *Id.* at *12 (citing TEX. R. APP. P. 44.2(a) (constitutional error requires reversal of judgment or punishment unless reviewing court determines beyond reasonable doubt that it did not contribute to conviction or punishment)).

In this case, appellant argued the print-out of the excluded KIK messages was relevant to his theory that G.G. fabricated her allegations against him to encourage J.S.'s sexual interest in her. But the exclusion of the print-out did not prevent appellant from presenting his desired defense. The jury heard G.G. acknowledge on cross examination that she told J.S. in their message exchange she was not a virgin, and that she made the accusations against appellant during that exchange. They also heard G.G. deny that J.S.

14

was her boyfriend, deny that she was interested in his being her boyfriend, and deny that, during their exchange, they "talk[ed] about getting together to have sex." They heard her deny that she told J.S. that appellant had "raped" her because she wanted to meet J.S., but heard her admit that she did meet the boy. The jury also heard evidence that she and J.S. engaged, later that night, in contact of a sexual nature. That evidence came from the video of A.H.'s forensic interview with Dr. Burkley, in which A.H. said G.G. told her she and J.S. had "dry humped." The evidence allowed appellant to argue to the jury,

> We know from the questioning of [G.G.] that she was engaging in some message exchanges with [J.S.]. We know that she's said, I'm not a virgin. They were talking about sex. And now we know they snuck out that night and dry humped together. That was a sexual experience that she was participating in, and that is the context in which that outcry was made to [J.S.]. [A testifying expert] agreed that it could be important that the conversation and the context of it involved a child exploring her sexual actions or engaging in that kind of behavior.

Exclusion of the print-out of the KIK message exchange did not preclude appellant from presenting his defense that her statement accusing appellant of raping her was a fabrication meant to encourage J.S.'s sexual interest. Appellant repeatedly argued to the trial court that the print-out was necessary to show the sexually-charged context of her message exchange with J.S., but the excluded print-out did not form the "vital core" of appellant's defensive theory of fabrication. Given the other evidence before the jury, we find instead the excluded print-out, like the evidence in *Juan,* would only "incrementally" have furthered appellant's defensive theory. Consequently, any error in excluding it was not of constitutional dimension. *Juan,* 2017 Tex. App. LEXIS 6384, at *12 (citations omitted). We will review the alleged error in excluding the evidence under Rule 44.2(b).

15

Under Rule 44.2(b), we must disregard any non-constitutional error that does not affect an appellant's substantial rights. *Id.* at *13 (citing TEX. R. APP. P. 44.2(b)). Substantial rights are not affected if, after examining the record as a whole, we have fair assurance the error did not influence the jury, or had but a slight effect. *Id.* (citing *Petetan v. State,* No. AP-77,038, 2017 Tex. Crim. App. LEXIS 286, at *94 (Tex. Crim. App. Mar. 8, 2017) (citing *Barshaw,* 342 S.W.3d at 93-94; *Hines v. State,* 383 S.W.3d 615, 625 (Tex. App.—San Antonio 2012, pet. ref'd)). In considering the potential to harm, the "focus is not on whether the outcome of the trial was proper despite the error, but whether the error had a substantial or injurious effect or influence on the jury's verdict. A conviction must be reversed for non-constitutional error only if we have 'grave doubt that the result of the trial was free from the substantial effect of the error.'" *Id.* (citing *Hines,* 383 S.W.3d at 625). "'Grave doubt' exists when the matter is so evenly balanced the judge feels in virtual equipoise as to the harmlessness of the error." *Id.* (internal citations omitted). Applying this standard here, we find any error in excluding the print-out of the other sexually-oriented KIK messages did not influence the jury or had only a slight effect. *Id.* (citation omitted).

Appellant subjected G.G. to strong cross examination before the jury regarding her accusations against him. Appellant's defensive case thoroughly examined G.G.'s explanation for her failure to mention appellant's sexual abuse of her during the investigation and CPS removal that preceded appellant's 2009 prosecution and conviction for injury to G.G. Evidence showed J.S. was not the first of her peers G.G. told of appellant's sexual abuse of her. G.G. and her stepsister A.H. testified that G.G. told A.H. of appellant's sexual abuse much before her conversation with J.S. But there was no dispute that G.G.'s mother first learned of her allegations of sexual assault when she

16

saw the KIK exchange on G.G.'s tablet. G.G.'s mother was thoroughly questioned at trial regarding her reaction to the KIK messages she saw, and her subsequent actions. As noted, the evidence of G.G.'s interactions with her friend J.S. on the night of their KIK exchange made clear to the jury that her accusation of appellant was told to J.S. in the course of a sexually-oriented conversation that preceded sexual conduct between the teenagers later the same night. The print-out of their conversation would have added little to the jury's understanding of the events, and added little to support appellant's theory that G.G.'s statements to Burkley and Sims, and her trial testimony, were fabrications. Having reviewed the excluded print-out, and the record as a whole, we are satisfied the print-out's exclusion from evidence did not influence the jury's verdict.

With regard to the browser history from G.G.'s tablet, we find the trial court did not err by excluding the evidence. Appellant sought admission of the browser history to show G.G.'s motive for making the statements to J.S. and to show her sexual curiosity and knowledge. The proffered browser history did not reflect the content of the sites visited but only their titles. Some of the titles listed in the history suggested the sites would contain pornographic content. For the history to be relevant, the evidence must show G.G. was the person who accessed and viewed the pornography sites. TEX. R. EVID. 401 (defining "relevant evidence" as any evidence having any tendency to make the existence of a fact of consequence more or less probable than it would be without the evidence).

At the hearing outside the jury's presence, Detective James Owens, a Waco police computer forensic examiner, testified the data did not show who accessed the pornography on G.G.'s tablet. G.G. stated she did not access those sites and that she did not always have her tablet with her. Others in the house could have used it, she

17

agreed. Detective Clark acknowledged that G.G.'s older brother had at some point logged into the browser under his user name and that other sites accessed on G.G.'s tablet included sites involving cars and weather.

Consequently, appellant failed to show the evidence of the tablet web browser history was relevant to an issue at trial. We cannot find the trial court abused its discretion in finding the web browser history inadmissible.

For these reasons, we overrule appellant's second and third issues.

Conclusion

Having resolved each of appellant's issues against him, we affirm the judgment of the trial court.


James T. Campbell
Justice


Do not publish.